*In re* MARRIAGE OF CATHERINE CARLS, Petitioner-Appellee, and JEF-FERY THOMAS CERESA, Respondent-Appellant.

Third District   No. 3—86—0238

Opinion filed December 23, 1986.

HEIPLE, J., dissenting.

Gerald M. Hunter, Ltd., of Oglesby (Gerald M. Hunter, of counsel), for appellant.

Anthony C. Raccuglia & Associates, of Peru (Cynthia M. Raccuglia, of counsel), for appellee.

PRESIDING JUSTICE SCOTT delivered the opinion of the court:

Respondent, Jeffery Thomas Ceresa, appeals from an order entered by the circuit court of La Salle County on March 27, 1986, which denied his petition to reduce the amount of his payments of child support.

The parties' marriage was dissolved on February 15, 1985. The respondent was ordered to pay $60 per week for support of his minor daughter Nicole and $45 per week as and for rehabilitative maintenance to the petitioner, Catherine. The order further provided that after a 12-month period, or sooner if the petitioner should remarry, maintenance payments were to terminate and child-support payments would be increased to $75 per week.

At the time of the dissolution, the respondent was residing in Oglesby, Illinois, and employed by Consolidated Freightways earning $13 per hour and his medical insurance was paid by the employer through the Teamsters Union. Respondent had maintained this employment for approximately seven years.

In August of 1985 respondent voluntarily terminated his employ-

ment and moved to Florida where his parents, a brother, sister-in-law, and nephew resided. Respondent resided with his parents, where he received meals and laundry service. This room, board, and laundry service was provided at no cost to respondent. Respondent does not possess an automobile but has the use of a 1977 Chrysler, which is provided by his parents.

In Florida the respondent, at the time of the hearing, had secured employment with Fort Meyers Express, and his earnings were to be $5 per hour. He had previously worked for another company for the same rate of pay.

The respondent's petition to reduce child-support payments is predicated upon a change of circumstances, to wit, his reduced income resulting from a change of employment. As previously stated, respondent's petition was denied, and the issue in this appeal is whether such denial by the trial court was proper or improper.

The Fifth District Appellate Court, in addressing this issue, made the following observation:

> "While substantial economic reverses resulting from employment or investments are proper circumstances in considering whether support obligations should be reduced or terminated, such changes in economic circumstances must be fortuitous in nature, and not the result of deliberate action by the party seeking the reduction. (*Coons v. Wilder* (1981), 93 Ill. App. 3d 127, 132, 416 N.E.2d 785.) Respondent's resignation from his job in this case was entirely voluntary, occurred within two months of the judgment of dissolution, and came at a time when respondent still had over five months remaining in his term of employment. Under these circumstances, we agree with the trial court that the voluntary change in respondent's economic conditions did not mandate abatement of his maintenance obligations." *In re Marriage of Stephenson* (1983), 121 Ill. App. 3d 698, 700-701, 460 N.E.2d 1, 3.

In the instant case the trial court acknowledged that the reduction of respondent's income constituted a substantial change of circumstances, but such change was not a fortuitous one, rather one that was deliberately brought about by the respondent. The trial court further noted that respondent, prior to his move, was well aware of the prevailing wage in the State of Florida, yet he gave up a job paying $13 per hour in Illinois to accept a $5-per-hour job in Florida.

The record in this case fully supports the findings and observations of the trial court. The sole reason that respondent gave for his move was that he wanted to be with his family, which included his

mother, father, brother, sister-in-law, and nephew. During cross-examination of the respondent, he was questioned as to whether he had any knowledge as to whether he would be improving his employment at the time he was leaving the Oglesby area to go to Florida. The respondent made the following reply:

"Well, it's kind of hard to improve on what they were paying here, and with the union scale and that. I assumed it would be lower, but I wasn't sure just how low it would be."

The respondent further testified to the effect that prior to his move he knew that his brother found employment in Florida cutting grass for $5 an hour.

The respondent, at age 27 with seven years' experience, was well employed, earning $13 an hour or $520 a week, with health insurance coverage paid by his employer through his union. For the sole reason that he wanted to be with his family and, as he stated, "I felt I would be happier there," he relocated himself in another State and obtained employment with a salary vastly lower than that which he forsook.

It is well established that a spouse's voluntary change in occupation or employment made in good faith may constitute a substantial change in circumstances sufficient to warrant modification of maintenance or child support. See *In re Marriage of Kowski* (1984), 123 Ill. App. 3d 811, 463 N.E.2d 840 (where modification was allowed when payor spouse retired at age 55, had valid concern over his health, and he had a lack of security in the job he quit). See also *Shellene v. Shellene* (1977), 52 Ill. App. 3d 889, 368 N.E.2d 153.

Under certain circumstances relief has been given to the payor spouse who leaves his employment for the purpose of upgrading his education. (See *Graham v. Graham* (1974), 21 Ill. App. 3d 1032, 316 N.E.2d 143 (where a father returned to college to complete his degree).) In *Graham*, however, the court found that the father's efforts to better his academic bargaining position and job security had commenced five years prior to his request for a reduction in payments. Further, in *Graham* the appellate court found that a doctor's degree was a condition imposed upon the respondent by the University of Illinois and if the condition was not met, the respondent's five years of academic endeavor might well be forfeited with the accompanying result of triggering the immediate payment of a $5,000 note plus interest. In the case of *Martinec v. Martinec* (1974), 17 Ill. App. 3d 402, 308 N.E.2d 161, although an abstract opinion, it is clear that the appellate court permitted a portion of child-support payments to be held in abeyance temporarily, but the amount would accrue to the benefit of the child upon the father's completion or termination of his col-

lege education and availability of full-time employment.

In the instant case it is noted that respondent does not even make a strong argument that the change of circumstances of which he complains has resulted in any onerous hardship on him. While making child-support payments, he was also able to pay off his debts and obligations, which included a $130-per-month payment on a pop-up camper.

At the time of the hearing before the trial court, the petitioner, Catherine Carls, was 25 years of age, remarried, and employed part-time at a Pizza Hut. She was also attending school in an effort to obtain a G.E.D. certificate, since she was not a high school graduate. The minor child, Nicole, was 8 years old at the time of the hearing. The respondent makes no argument that Nicole's welfare does not require the payments but stresses only his hardship imposed by such payments.

The respondent, a young, healthy man, unilaterally walked away from a well-paying job, thinking only of his contentment and happiness. Should respondent's request for modification of child-support payments be granted, then it would be difficult to envision a voluntary change of circumstances which would not support a reduction in child support. Would this court abate child-support payments for the father who desires the sunny climate and decides to become a beachcomber? Of course the answer is "no"; however, the respondent in the instant case presents this court with a situation which is not too dissimilar from that illustrated in the foregoing question posed by the court.

The respondent is overlooking a very fundamental legal truism which is that a dissolution of marriage does not erase the support obligations of the parents to the child. The primary concern is the minor children and, in this case, the minor child, Nicole. The trial court correctly determined that the change of circumstances in the instant case was not a fortuitous change but a deliberate and ill-advised one.

For the reasons set forth, the judgment of the circuit court of La Salle County is affirmed.

Affirmed.

STOUDER, J., concurs.

JUSTICE HEIPLE, dissenting:

The majority has incorrectly applied the standards governing this matter, which are as follows. A voluntary change in occupation or em-

ployment made in good faith may constitute a material change in circumstances sufficient to warrant a modification of a child-support order. (*Coons v. Wilder* (1981), 93 Ill. App. 3d 127, 416 N.E.2d 785.) "[A] voluntary, good faith change in employment need not equal or increase the spouse's income; indeed, substantial reductions may be permissible and do not *per se* constitute a lack of good faith." (*In re Marriage of Kowski* (1984), 123 Ill. App. 3d 811, 814, 463 N.E.2d 840.) The crucial consideration in testing good faith is whether the change in status was prompted by a desire to evade financial responsibility for supporting children. The change in circumstances must be fortuitous in nature and not the result of deliberate action or conduct on the part of the party seeking the reduction. *Coons v. Wilder* (1981), 93 Ill. App. 3d 127, 416 N.E.2d 785.

There is no question in the instant case that the respondent voluntarily terminated his employment with Consolidated Freightways where he was earning $13 per hour operating a forklift and moved to Florida where he was earning $5 an hour for basically the same work. Also, there is no question that the move to Florida was made in good faith. Despite the majority's unwarranted suggestion that the respondent's move was comparable to a father's desire to become a beachcomber in the sunny climes of Florida, the trial judge specifically found that the "respondent's move to Florida was prompted by a desire to be near his family, rather than by a desire to evade responsibility to support his child." In addition, no one disputes that the reduction of the respondent's income is a substantial change of circumstance. Nevertheless, the majority upholds the trial court's decision that the change in circumstance was not fortuitous in nature, but was the result of deliberate action on the part of the respondent. I cannot agree.

While the move to Florida was obviously a deliberate act on the part of the respondent, the resulting reduction in pay sustained as a consequence of the move cannot be termed anything but fortuitous. It has not been shown or even suggested that the respondent deliberately set out to decrease his income so he would not have to contribute to the support of his child. When the respondent's parents suggested that he relocate in Florida, they gave the indication that there was plenty of work to be obtained. The respondent moved to Florida with the hope that he could find a job earning what he earned in Illinois. While he knew that employment would be "non-union" and the pay scale would be lower, he was not aware of just how low it actually was. The fact that his brother earned $5 per hour doing lawn care in Florida does not show that the respondent was aware of the prevail-

ing wage rate for the type of work which he did, which was operating a forklift.

The custodial parent should not be allowed to freeze the other parent in his or her employment or occupation at the time of the dissolution of marriage. As long as changes in employment or occupation are undertaken in good faith and not deliberately designed to avoid responsibility for dependents, a person should be permitted to seek personal satisfaction and happiness in another job or occupation in a different location and obtain a reduction in child-support obligations if necessary. See *In re Marriage of Kowski* (1984), 123 Ill. App. 3d 811, 463 N.E.2d 840. (reduction of child support allowed where substantial change in circumstance was shown by reduced income resulting from petitioner's good-faith change of employment because of concern over health and lack of job security); *Coons v. Wilder* (1981), 93 Ill. App. 3d 127, 416 N.E.2d 785 (a decision made in good faith to quit employment in order to further education can be a material change in circumstance warranting a modification of a child-support obligation; *Martinec v. Martinec* (1974), 17 Ill. App. 3d 402, 308 N.E.2d 161 (abstract of opinion) (reduction in child support allowed where the plaintiff-husband left his position as a police officer to become a full-time student in good faith).

The majority is overlooking a very fundamental legal truism which is that child-support obligations must necessarily include consideration of the child's welfare in light of the father's ability to pay. (*Coons v. Wilder* (1981), 93 Ill. App. 3d 127, 416 N.E.2d 785.) At the time of the dissolution of marriage, the respondent was earning approximately $520 per week and was ordered to pay $60-per-week child support and $45-per-week maintenance to the petitioner. The order further provided that after a 12-month period, or sooner if the petitioner should remarry, maintenance payments were to terminate and child-support payments would increase to $75 per week. The petitioner has since remarried. At the time the respondent sought a modification of his child-support obligation, he had $131-per-week spendable income. The court's decision unrealistically assumes that the respondent will be able to continue paying $75 per week toward child support, while realistically such payments are an impossibility in light of the respondent's present income. This decision will only result in further problems between the parties concerning the respondent's failure to pay the full child-support obligation.

No one can dispute that a healthy parent has a duty to support his minor children within his means. What this court is effectively imposing on the father, however, is the duty to live in a particular place

818

(Illinois) and work at a particular job (Consolidated Freightways). The majority rhetorically asks whether this court would abate child-support payments for the father who desires the sunny climate and decides to become a beachcomber. That question begs the issue. Would it make any difference if he were going to the Yukon to prospect for gold? or joining the Peace Corps to work with needy people in Asia, Africa, or South America? or going to work as a salesman, entertainer, or whatever at a substantial *increase* in wages?

The father's move to Florida in this case was not made to spite his child. He moved to Florida to be with his family. He took the best job he could get. His support payments should be adjusted to reflect his ability to pay.

Requiring the respondent to live in a particular place and work at a particular job makes him, in effect, a slave. While the court is not explicitly saying that the defendant must remain in Illinois and work at Consolidated Freightways, it is premising the support order on that imagined set of circumstances. Thus, the effect of the order is a form of economic slavery which, as we all know, was abolished by the thirteenth amendment to our Federal Constitution.

Moreover, the court ignores reality. The respondent is in Florida. He is earning $5 an hour. He cannot pay $75-per-week child support on his present earnings. This type of impossible situation will not help the child, the mother, or the father. The money will not be paid, cannot be paid, and cannot be enforced by the court.

For the foregoing reasons, I respectfully dissent.