*In re* MARRIAGE OF SUSAN DARLENE HORN, Petitioner-Appellant, and DAVID DONALD HORN, Respondent-Appellee.

Fourth District    No. 4—94—0761

Argued March 6, 1995.—Opinion filed May 16, 1995.—Rehearing denied June 20, 1995.

Joseph W. Vigneri (argued), of Vigneri & Robinson, of Decatur, for appellant.

Frederick P. Erickson (argued), of Erickson, Davis, Murphy, Johnson, Griffith & Walsh, Ltd., of Decatur, for appellee.

Harold A. Katz, Stanley Eisenstein, and Jane T. Bohman, all of Katz, Friedman, Schur & Eagle, of Chicago, for *amicus curiae*.

JUSTICE COOK delivered the opinion of the court:

Respondent, David Horn, filed a petition to reduce child support payments after his union went on strike against his employer, Caterpillar Tractor. After hearing, the trial court granted the reduction from $121 to $20 per week, retroactive to the date respondent filed the petition to modify. The court also directed that the previous child support order would be reinstated the first Friday after the strike

ended. On appeal, petitioner, Susan Horn, contends that voluntary participation in a strike does not constitute a legitimate basis for reducing child support payments. She also contends the trial court erred in reducing support retroactively to the date the petition to modify was filed because the evidence showed respondent had income available to him which he used to pay personal debts rather than his court-ordered child support.

The facts are not in dispute. The parties' marriage was dissolved on May 6, 1994. Respondent was ordered to pay $121-per-week child support. The judgment of dissolution also required that respondent pay petitioner $19,000, most of which represented her equity in the marital home, which was awarded to respondent. On June 24, 1994, respondent filed a petition to modify child support asking that payments be terminated or substantially reduced because respondent's union began a strike three days earlier against his employer and he was unable to pursue his regular occupation. A hearing was held on July 27, 1994. Petitioner testified that prior to the strike, respondent had been current in child support payments. He also paid a total of $19,000 to her by early June 1994, of which she retained approximately $15,400 in a savings account. Petitioner is currently employed earning $6.50 per hour.

Respondent testified he is a machinist and shop steward at Caterpillar and a member of the union which went on strike on June 21, 1994, three days before the petition to modify was filed. As a 20-year union member, respondent honored the picket line as he had during two previous strikes against Caterpillar. Petitioner had supported his decision to go out on strike with his union on these previous occasions. When asked the reason for the current strike, respondent replied, "to protect our jobs, our family's future." He denied taking part in the strike to avoid paying child support and other claims of his former wife.

Respondent acknowledged paying petitioner $19,000 after the marriage was dissolved. He had intended to refinance the former marital residence to obtain the funds, but because of the strike, a loan approval was withdrawn by the bank. He then borrowed $14,000 from his brother to pay the balance of the sum he owed his former wife. Respondent had repaid his brother approximately $6,000 at the time of the hearing.

Respondent offered a financial affidavit showing monthly living expenses of almost $2,000. While he indicated that since the strike began he was not able to pay these expenses in the amounts he indicated, he remained current on his mortgage payments and real estate taxes. Respondent's current income is $100-per-week strike

pay, which is subject to Federal and State taxes. Respondent concluded that he did not have any money with which to pay child support and had exhausted virtually all of his financial resources paying the money awarded to his ex-wife and repaying the loan from his brother.

On cross-examination, respondent indicated the strike was predicated on a vote by union members taken three years earlier. Prior to the strike, he was earning $19.50 an hour. Respondent testified he attempted to find alternative employment by answering ads in newspapers for one delivery and two warehouse jobs. He was refused employment because these employers would not hire strikers. He conceded he had not tried to find a job as a machinist. Respondent agreed that Caterpillar was offering $17 an hour as a starting rate for people who crossed the picket line. Respondent had not considered crossing the picket line in violation of union rules.

When asked how a strike was going to protect his job and family, respondent stated that the union wanted to "stop the take-aways." He explained that Caterpillar was attempting to change job security provisions of the collective-bargaining agreement by initiating a two-tier wage scale which would result in a lower pay scale for employees being recalled after layoffs. Respondent stated he earned between $48,000 and $49,000 in 1993, and approximately $28,000 in 1994, up to the date of the strike.

Respondent also acknowledged receiving a $1,500 vacation check at the beginning of June 1994. Respondent used that money to pay some of his bills but did not use any of it to pay child support. When he received his first $100 in strike pay, he unilaterally reduced his child support payment to $12 or $14, which was his calculation of 20% of the net strike pay he would receive after taxes. Respondent also conceded that all of his other expenses were current with the exception of child support and he had not reduced his payments on any of his other outstanding debts although his funds were now exhausted.

When asked if there was anything physically preventing him from crossing the picket line, respondent stated, "if you want to help management break the union and reduce the pay, yes, you can cross the picket line." Respondent also did not want to be considered a "strikebreaker" or a "scab" because of harassment and potential physical violence.

Petitioner again testified stating that since respondent unilaterally reduced child support payments, she had to expend money from her savings to cover her expenses and those of the four-year-old daughter of the marriage. Petitioner was also not informed by re-

spondent that he had received vacation pay which he used to pay bills other than child support. Petitioner offered that she had intended to use the funds received from the marital estate as a down payment on a house. Because she was still a co-signer on the mortgage for the former residence, which respondent was unable to refinance, she was unable to secure a new loan.

During argument before the trial court, counsel for respondent cited *Cohn v. Cohn* (1984), 122 Ill. App. 3d 763, 461 N.E.2d 1028, for the proposition that strikers are entitled to seek a modification of child support payments. The court noted that no one had cited that case to him in 1991 when these same issues arose in other cases during a previous strike at Caterpillar in 1991. Based on *Cohn*, which the court felt it had a duty to follow, the trial judge reduced respondent's child support payment to $20 a week, retroactive to the date the petition was filed with the previous support order to be reinstated the first Friday after the strike ended.

On appeal, petitioner maintains that respondent has an overriding obligation to support his child and may not use his voluntary participation in a labor-related strike as an excuse to reduce his support obligation. In essence, petitioner argues respondent has a duty to cross the picket line and cannot be acting in "good faith" by abandoning a yearly income of approximately $49,000 to support a strike, the benefits of which are ethereal at best. Petitioner cites no authority for this proposition, and the law would appear to be otherwise.

■ The decision to grant or deny a petition to modify an award for child support lies within the sound discretion of the trial court, and this court will not disturb the trial court's decision on appeal absent an abuse of discretion. (*In re Marriage of Bussey* (1985), 108 Ill. 2d 286, 296, 483 N.E.2d 1229, 1233.) In determining whether to reduce an order of child support, the trial court may appropriately consider any substantial economic reversal resulting from a change of employment. (*In re Marriage of Donovan* (1984), 122 Ill. App. 3d 803, 805, 462 N.E.2d 9, 11.) A good-faith, voluntary change in employment which results in diminished financial ability may constitute a substantial change in circumstances justifying a reduction in child support payments. (*Coons v. Wilder* (1981), 93 Ill. App. 3d 127, 132, 416 N.E.2d 785, 790.) The test for determining if a decision was made in good faith is whether the change was prompted by a desire to evade financial responsibilities for supporting the children or to otherwise jeopardize their interests. (*In re Marriage of Webber* (1989), 191 Ill. App. 3d 327, 330, 547 N.E.2d 749, 751.) The party seeking the modification must present evidence of a motive, other than evasion of

financial responsibilities for support of the children, in support of the petition for modification. *In re Marriage of Imlay* (1993), 251 Ill. App. 3d 138, 142, 621 N.E.2d 992, 995.

■ In our view, engaging in a strike as a result of a labor dispute should be governed by the same rules which apply to other employment-related changes such as losing a job (*In re Marriage of Wiley* (1990), 199 Ill. App. 3d 223, 556 N.E.2d 788), moving to another State to pursue employment (*In re Marriage of Carls* (1986), 150 Ill. App. 3d 812, 502 N.E.2d 756), returning to college (*Webber*, 191 Ill. App. 3d 327, 547 N.E.2d 749), becoming self-employed (*In re Marriage of Hardy* (1989), 191 Ill. App. 3d 685, 548 N.E.2d 139), or retiring (*In re Marriage of Waldschmidt* (1993), 241 Ill. App. 3d 7, 608 N.E.2d 1299). The key question in each of these situations is whether the payor acted in good faith. If he did, the trial court may reduce child support payments.

■ In this case, there is evidence of a long-standing labor dispute, which has been lingering for a number of years. The current strike was preceded by a lengthy work stoppage in 1991. Although the union returned to work, the underlying dispute has never been resolved. On this record, there is no evidence that respondent engaged in the strike along with the other members of his union in anything other than good faith irrespective of whether the union's position is ultimately vindicated. In these circumstances, the trial court has the discretion to consider modifying child support payments. See *Cohn*, 122 Ill. App. 3d 763, 461 N.E.2d 1028 (air traffic controller who participated in good-faith strike whose employment was subsequently terminated by presidential order entitled to modification of child support payments); *In re Marriage of Burris* (1994), 263 Ill. App. 3d 495, 636 N.E.2d 71 (miner who engaged in good-faith strike entitled to a modification of child support payments).

We emphasize, however, that the mere fact an individual is on strike does not automatically require a trial court to reduce child support payments. If the payor has other assets from which his child support obligation may be satisfied, the loss of current income would not justify a decrease in support payments. Likewise, by its very nature, a strike is "temporary." If the strike is anticipated to be of limited duration, a current loss of income for a short time will not constitute substantial economic reversal sufficient to justify a modification of child support.

We are concerned in this case about the timing of the filing of the petition to modify and the hearing held on it. The petition was filed only three days after the strike began and the hearing occurred only one month later. Normally, a petitioner must wait to file his petition

until the accumulating changes in his economic condition amount to a "substantial change" in circumstances. (In re Marriage of Pedersen (1992), 237 Ill. App. 3d 952, 957, 605 N.E.2d 629, 633.) A three- or four-day strike would probably not constitute a "substantial change" in circumstances. Nevertheless, we recognize that because a reduction can only be retroactive to the date the petition was filed, it makes sense to file a petition early. A trial court may exercise some control by deferring consideration or resolution of the petition until an appropriate period of time has elapsed to see if the change in circumstances is truly substantial or only transient. In view of the ongoing history of labor strife between respondent's union and Caterpillar, and the likelihood of a protracted strike, we cannot say the trial court abused its discretion in this case in considering the petition on the merits only one month after the strike began.

A more fundamental concern we have, based on comments made by the court before reducing support payments, is whether the court actually exercised its discretion or instead felt bound by the decision in Cohn to reduce support payments. The decision to modify is clearly discretionary. Likewise, additional comments by the court indicate it would have considered, but apparently did not believe it had authority to allow, suspended payments to accrue to be repaid at a later date. We remand so that the trial court may consider both these issues.

We recognize the court in Coons observed there was no statutory or case authority for the trial court to temporarily abate a portion of a support order the supporting parent was without present means to pay. (Coons, 93 Ill. App. 3d at 135, 416 N.E.2d at 792.) As a general rule, that principle is correct since the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/101 et seq. (West 1992)) is geared toward a present ability to pay support. However, there are limits to that general rule. If a payor of child support sacrifices $10,000 of income this year in exchange for receiving $20,000 of income in future years, we should not allow him to impose the burden of child support on the custodian based on his current sacrifice and ignore his future benefit (which may not be reachable for child support at the time it is received). The Supreme Court of Illinois has recently promulgated Supreme Court Rule 296(f) (134 Ill. 2d R. 296(f)), which permits suspended payments to accrue. Based on this authority, we conclude the Coons rejection of abatement is no longer applicable to situations which, by their very nature, are inherently temporary.

We take judicial notice that Macon is not one of the counties which has petitioned the supreme court for authorization to employ the full panoply of procedural and substantive provisions of Rule 296.

We believe, nevertheless, the existence of the rule, which permits a court to temporarily reduce support payments for a period of six months, but requires that the abated amount continue to accrue and be repaid at a later date, provides authority for any court to do the same in appropriate circumstances irrespective of whether the county is operating under the broader provisions of the rule.

Finally, we are concerned with respondent's unilateral reduction in child support payments as a matter of first resort, especially when, in early June, respondent was in possession of at least $1,500 in vacation pay which he used to pay other debts without reduction. Since we are remanding this case for reconsideration, the trial court will have the opportunity to take another look at that $1,500.

For the foregoing reasons, the judgment of the circuit court of Macon County is vacated and the cause is remanded for further proceedings.

Vacated and remanded.

KNECHT, P.J., and McCULLOUGH, J., concur.