*In re* MARRIAGE OF JONATHAN H. BARNARD, Petitioner-Appellee, and SHERRY BARNARD, n/k/a Sherry Centanni, Respondent-Appellant.

Fourth District   No. 4—95—0874

Argued May 21, 1996.—Opinion filed August 16, 1996.

Steven E. Siebers (argued), of Scholz, Loos, Palmer, Siebers & Duesterhaus, of Quincy, for appellant.

Andrew C. Schnack III (argued), of Schnack, Schnack & Cashman, of Quincy, for appellee.

JUSTICE KNECHT delivered the opinion of the court:

Respondent Sherry Barnard appeals from an order of the circuit court of Brown County granting petitioner Jonathan Barnard's petition to reduce child support, arguing the trial court erred in temporarily reducing Jonathan's child support obligations subject to accrual (134 Ill. 2d R. 296(f)). We affirm.

The parties do not disagree as to the relevant facts. We therefore adopt the findings of fact made by the trial court. Jonathan is an attorney, formerly with a law firm in Quincy, while Sherry works part-time with the Quincy school district. During the marriage, the parties had two children, who were 13 and 16 years of age at the time of the proceedings below. The parties were divorced in October 1987. Jonathan remarried in May 1989.

In July 1989, the parties entered into a comprehensive settlement agreement. By the terms of this agreement, Jonathan agreed to pay $2,500 per month to Sherry for child support and $2,000 per

month for maintenance. Maintenance terminated in 1991 when Sherry remarried.

In the summer of 1994, Jonathan sought to renegotiate the settlement agreement so a portion of his support payments would go into a college fund for his children. Jonathan stated in his deposition he was concerned about his ability to pay for his children's college expenses, given the then-current terms of the settlement agreement. No agreement on this matter was reached with Sherry. In late 1994, Sherry filed a petition to enforce the settlement agreement. Among the disputed issues were an escalator clause in the original agreement, an allocation date for Sherry's 65% share in Jonathan's retirement plan, and certain unpaid medical reimbursements. The trial court found Jonathan over $30,000 in arrears for child support for the years 1992 thru 1995, the arrearages being due to the escalator clause which had been at issue. The trial court also found Jonathan should have allocated to Sherry the 65% share of his retirement plan in 1990 and ordered Jonathan to take the necessary actions to accomplish the allocation. The parties stipulated Jonathan had, prior to the trial court's ruling on the petition to enforce, reimbursed Sherry $1,700 for medical expenses of the children.

In response to this petition to enforce, Jonathan filed a counterpetition to reduce his child support in October 1994. Jonathan's total income between 1989 and 1994 ranged from $138,000 to $191,000. He sought reduction of his child support for several reasons, including the fact he was currently paying more support than required by statute, he had additional financial obligations as a result of a new child by his current wife, his partnership share in his law firm had substantially declined, and Sherry's income had increased substantially since her remarriage.

Both parties made discovery requests of each other. In his requests, Jonathan sought the joint income tax returns of Sherry and her new husband. Sherry's husband, Ross Centanni, is president and chief executive officer of Gardner Denver Machine, Inc. (Gardner). While Jonathan was a partner at the firm in Quincy, the firm had acquired Gardner as a client. On November 2, 1994, Centanni sent a letter to one of the managing partners at Jonathan's firm terminating Gardner's relationship with the firm. The letter made clear the action was being taken due to Jonathan's discovery requests and specifically mentioned Gardner's "$400,000+ annual legal fees" in the process. The letter stated in conclusion, "[s]hould this matter correct itself in the future, we may be able to conduct business again."

The partners at Jonathan's firm then called a meeting, at which time Centanni's letter was read. Following a discussion of the letter,

Jonathan agreed to dismiss his counterpetition, and the counterpetition was dismissed December 20, 1994. According to Jonathan, he asked the other partners if the firm would be willing to pay him the $6,000 per year he had calculated as the amount his support payments exceeded the statutory guidelines per year. The partnership was not willing to do this. Feeling his access to the courts in future dealings with Sherry would be threatened by Centanni and his relationship with the firm, Jonathan decided in either December 1994 or January 1995 to leave the firm. Jonathan had been chief trial lawyer after a 20-year association with the firm.

Jonathan then set up his own law practice and attempted to bring as many former clients with him as possible. To supplement his income, he accepted part-time work with the Adams County State's Attorney's office, for which he will be paid $30,000 per year. On January 31, 1995, Jonathan filed this petition, again asking for a reduction in child support, this time due to his greatly reduced earnings. On August 2, 1995, an evidentiary hearing was held to determine whether Jonathan had experienced a substantial change of circumstances justifying a reduction in child support.

In a written order dated September 11, 1995, the trial court found Jonathan acted in good faith in leaving his former firm and starting a solo practice, as his freedom to access the courts in matters concerning Sherry would have been impaired by the leverage Centanni held over the firm. The trial court also found Jonathan's actions had resulted in a substantial change in his financial circumstances. See 750 ILCS 5/510(a)(1) (West 1994). The court temporarily reduced Jonathan's child support payments from $2,500 per month to $1,500 per month for a period of six months, *with the accrued difference to be paid at a later date.* The trial court entered a written order finding there was no reason to delay either enforcement or appeal (155 Ill. 2d R. 304(a)), and this appeal followed.

■ In Illinois, a party may request a modification of his or her child support obligations based on a substantial change of circumstances. 750 ILCS 5/510(a)(1) (West 1994); *In re Marriage of Fink*, 275 Ill. App. 3d 960, 964, 656 N.E.2d 1131, 1134 (1995). A voluntary change in employment which results in diminished financial status may constitute a substantial change in circumstances if undertaken in good faith. *In re Marriage of Horn*, 272 Ill. App. 3d 472, 476, 650 N.E.2d 1103, 1106 (1995). In determining whether an individual acts in good faith in changing employment, the trial court looks at whether the change was driven by a desire to evade financial responsibility for supporting the children. *In re Marriage of Mitteer*, 241 Ill. App. 3d 217, 224, 608 N.E.2d 607, 612 (1993). The proponent

of the reduction of child support payments bears the burden of demonstrating a proper motive underlying his voluntary change in employment. *Horn*, 272 Ill. App. 3d at 476, 650 N.E.2d at 1106; *In re Marriage of Imlay*, 251 Ill. App. 3d 138, 142, 621 N.E.2d 992, 994 (1993).

■ Where a trial court's decision reducing child support is based on a finding of an obligor's good-faith, voluntary change of employment, the party opposing the motion is left with two avenues of attack on appeal. The appealing party may attack either the trial court's finding the obligor acted in good faith in changing employment (see *Mitteer*, 241 Ill. App. 3d at 226, 608 N.E.2d at 613 (petitioner's case rested on his credibility as a witness)), or the trial court's ultimate decision such a change justified a reduction in child support (see *Horn*, 272 Ill. App. 3d at 477-78, 650 N.E.2d at 1107 (no abuse of discretion where court found petitioner's good-faith joining of labor strike justified a reduction in child support)).

■ Sherry asserts we should review *de novo* the trial court's decision in the present case. However, she cites no authority in support of this contention, and the argument is otherwise without merit. Neither of the trial court's findings mentioned above receives *de novo* review on appeal.

■ We find petitions to modify payment orders of any kind require the trial court to engage in a two-step process: (1) a judicial determination on a question of fact, *e.g.*, whether there has been a material change in the financial circumstances of the parties, or whether a party acted in good faith in voluntarily changing employment; and (2), if so, whether and by how much to modify the support ordered. Each of these steps calls for a different standard of review: the first, whether the trial court's factual determination was against the manifest weight of the evidence; and the second, whether its decision at step two above, being a matter for the trial court's discretion, constituted an abuse of that discretion. We review the court's findings here with these precepts in mind.

■ Whether a party has acted in good faith is generally a question of fact. *Kuwik v. Starmark Star Marketing & Administration, Inc.*, 156 Ill. 2d 16, 27, 619 N.E.2d 129, 134 (1993); *People v. Holmes*, 135 Ill. 2d 198, 216, 552 N.E.2d 763, 773 (1990); *In re Estate of Glassman*, 257 Ill. App. 3d 102, 111, 628 N.E.2d 666, 672 (1993); *Mitteer*, 241 Ill. App. 3d at 226-27, 608 N.E.2d at 613; but see *Wilson v. Hoffman Group, Inc.*, 131 Ill. 2d 308, 314-15, 546 N.E.2d 524, 527 (1989). We will, therefore, not reverse a trial court's finding of good faith (or lack thereof), unless it is against the manifest weight of the evidence. See *People v. Scapes*, 247 Ill. App. 3d 848, 850-51, 617 N.E.2d 1366,

1369 (1993). Whether a voluntary change in employment, found to have been taken in good faith, justifies a reduction in child support is a discretionary decision of the trial court which we will not reverse absent an abuse of that discretion. *Horn*, 272 Ill. App. 3d at 476, 650 N.E.2d at 1106 (good-faith voluntary change in employment "may" constitute a substantial change in circumstances). Finding such a change in employment was made in good faith does not automatically entitle the obligor to a reduction in child support, as the trial court is free to accept or reject this good-faith change in determining whether the obligor has experienced a substantial change in circumstances. *Horn*, 272 Ill. App. 3d at 477-78, 650 N.E.2d at 1107 (labor strike undertaken in good faith does not automatically justify reduction in support, as strike may be short-lived or obligor may have other assets sufficient to pay support).

■ The thrust of Sherry's argument on appeal concerns whether the trial court properly found Jonathan acted in good faith in leaving the firm. She appears to concede the trial court's decision to reduce temporarily Jonathan's child support obligations was proper, if the trial court rightly concluded Jonathan acted in good faith in this case. Thus, we only look to see if the trial court's finding Jonathan's change in employment was undertaken in good faith and not for the purpose of avoiding his support obligation was against the manifest weight of the evidence. We emphasize the superior position of the trial court in these matters and the great deference we must accord the trial court's findings. As a reviewing court, we extend all reasonable presumptions in favor of the ruling below, and we will not presume error occurred at the trial level. See *In re Marriage of Frazier*, 205 Ill. App. 3d 621, 625, 563 N.E.2d 1236, 1239 (1990); *In re Marriage of Pitulla*, 202 Ill. App. 3d 103, 114-15, 559 N.E.2d 819, 829 (1990); *Village of Cary v. Jakubek*, 121 Ill. App. 3d 341, 345-46, 459 N.E.2d 651, 654 (1984).

In *In re Marriage of Kowski*, 123 Ill. App. 3d 811, 463 N.E.2d 840 (1984), the petitioner sought a reduction in his maintenance obligations. The evidence disclosed petitioner's employer had been acquired by new management. The new owners immediately increased petitioner's work responsibilities, and petitioner anticipated a decrease in his salary. Petitioner's new employers made statements intimating petitioner's dismissal or replacement was imminent. *Kowski*, 123 Ill. App. 3d at 812-13, 463 N.E.2d at 842. As a result of these developments, petitioner's health declined, and he left his job to become co-owner of a new company. Following the change in employment, petitioner's annual income dropped from $30,000 to $18,200. *Kowski*, 123 Ill. App. 3d at 812, 463 N.E.2d at 842. The trial

court denied the petition to decrease maintenance, but the appellate court reversed. In finding the trial court erred, the *Kowski* court placed particular emphasis on petitioner's lack of job security at his previous place of employment and his subsequent gain of job security resulting from being a co-owner of a new business. *Kowski*, 123 Ill. App. 3d at 816, 463 N.E.2d at 844.

In light of *Kowski*, it is apparent the trial court's finding was not against the manifest weight of the evidence. Like the petitioner in *Kowski*, Jonathan was found by the trial court to have been motivated by concerns over job security when he chose to leave his former employer. Jonathan was placed in the unenviable position of being forced to choose between his partnership and his freedom to access the courts without the partnership dictating his rights with respect to Sherry and his children. This dilemma for Jonathan was brought about by Sherry's current husband Ross Centanni and the partnership's chosen response to Centanni's tactics. There is no merit to Sherry's assertion Jonathan demonstrated nothing more than a lack of bad faith in changing employment.

Sherry asserts Jonathan should have pursued his original counterpetition to reduce child support in defiance of the wishes of his firm and waited to see if he would be terminated. We reject this contention. As with the petitioner in *Kowski*, Jonathan was not required to wait until his change of employment became an involuntary one to justify a reduction in child support.

Sherry places great emphasis on the distinction between "voluntary" and "involuntary" changes of employment. However, these labels can be deceiving and are not always determinative as to whether one acted in good faith. For example, in *Imlay*, cited by Sherry, the respondent had been fired from his job as a salesman. The evidence indicated he had been convicted of driving under the influence (DUI) and lost his license, which hampered his ability to make in-person customer calls. Respondent also failed to maintain sufficient telephone contacts with his customers following his DUI conviction. After he was fired, respondent sought a reduction in his child support obligations. Even though the change in employment had been technically "involuntary," this court in *Imlay* found many of the events underlying respondent's discharge to be within respondent's control, thus justifying the denial of a reduction in child support. *Imlay*, 251 Ill. App. 3d at 141-42, 621 N.E.2d at 994. As *Imlay* illustrates, a change of employment which may outwardly appear to be involuntary may, in reality, be voluntary and treated accordingly.

The converse is equally true. A change of employment which

may outwardly appear to be voluntary may, in light of the surrounding circumstances, be more properly characterized as an involuntary change in employment justifying a reduction in support. The instant case is an example. Here, as Sherry notes, Jonathan's decision to leave the firm was technically "voluntary." Yet for all practical purposes Jonathan was forced to leave the firm, considering the letter sent by Sherry's husband and the resulting actions taken by the firm in pressuring Jonathan to drop his counterpetition against Sherry. Jonathan's deposition indicates the decision to leave the firm was a difficult one for him, considering he had been associated with the firm for over 20 years and was, at the time, chief trial counsel. Jonathan stated the decision was not motivated by a belief he could earn more money on his own, and he actually expected to make considerably less than he had at the firm by starting his own practice. The trial court's conclusion Jonathan was "forced to leave the firm in order to obtain court review of his disputes with his ex-wife" was not against the manifest weight of the evidence.

The other cases discussed by Sherry in her brief do not support her position. *Mitteer* involved a father who sought abatement of his child support after he quit his job to pursue a four-year degree. The only evidence produced by the petitioner was his own testimony such a degree was necessary to secure his future in the optical industry. The petitioner had a history of child support arrearages, having been found in contempt once for failing to pay an arrearage. *Mitteer*, 241 Ill. App. 3d at 226, 608 N.E.2d at 613. *Mitteer* turned solely on the petitioner's credibility. The trial court did not find the petitioner credible and denied his request for abatement. This court refused to reverse the trial court's finding. *Mitteer*, 241 Ill. App. 3d at 227-28, 608 N.E.2d at 614.

Here, in contrast, Jonathan introduced additional evidence, other than his own testimony, in support of his reason for leaving the firm. The letter from Sherry's husband was introduced, and the letter makes it clear Gardner's business relationship with the firm was tied to Jonathan's dropping his counterpetition against Sherry. Whereas the petitioner in *Mitteer* had quit working altogether and sought an abatement of child support, Jonathan has continued working to the extent possible and has only received a temporary reduction in his child support payments, with the accrued balance to be paid at a later date. Finally, this court in *Mitteer* refused to overturn a credibility determination made by the trial court—exactly what Sherry is asking us to do here.

*In re Marriage of Dall*, 212 Ill. App. 3d 85, 569 N.E.2d 1131 (1991), involved a father who resigned his office as sheriff due to pending

criminal charges against him and then sought to reduce his child support payments. The petitioner claimed he resigned to promote law enforcement, as his failure to do so would "cripple" law enforcement. *Dall*, 212 Ill. App. 3d at 96, 569 N.E.2d at 1138. The petitioner resigned with over $1^{1}/_{2}$ years left in his term of office and no impeachable charge pending against him. Petitioner made no significant attempt to find alternate employment. The trial court's decision denying the petition to reduce support was affirmed on appeal. *Dall*, 212 Ill. App. 3d at 94-95, 569 N.E.2d at 1137.

*Dall* is distinguishable from this case. The petitioner in *Dall* claimed to have resigned as a result of pressures created by his own criminal conduct, not pressures outside his control which were created by other third parties. In contrast, Jonathan was forced to resign due to pressure placed upon him by members of his former firm to abandon his legal right to seek a reduction in child support payments, pressure which originated in actions taken by Sherry's husband. The petitioner in *Dall* was found to have made no substantial attempts to obtain other employment, in contrast to Jonathan's considerable efforts in the present case.

Sherry further cites *In re Marriage of Stephenson*, 121 Ill. App. 3d 698, 460 N.E.2d 1 (1983), in support of her position. The respondent in *Stephenson* sought to have his maintenance obligations abated after he voluntarily resigned his job. His resignation occurred within two months of the judgment of dissolution of his marriage and occurred despite the fact there were five months left in respondent's term of employment. The only reason for the resignation which can be found in the text of the *Stephenson* opinion was "differences of opinion" between respondent and his supervisory board. *Stephenson*, 121 Ill. App. 3d at 700, 460 N.E.2d at 3. The appellate court affirmed the trial court's denial of respondent's request to abate maintenance. *Stephenson*, 121 Ill. App. 3d at 700-01, 460 N.E.2d at 3.

*Stephenson* may also be distinguished from the instant case. In contrast to the respondent in *Stephenson*, Jonathan did not seek abatement of his obligations, and the change in his employment status did not occur on the heels of a dissolution proceeding. While the extent of the "differences of opinion" between respondent and his employer in *Stephenson* is not apparent from the opinion, it is doubtful whether those differences would have risen to the level of coercion brought to bear against Jonathan by his former firm and Sherry's husband in this case. Respondent's resignation in *Stephenson* was found to be "entirely voluntary" (*Stephenson*, 121 Ill. App. 3d at 701, 460 N.E.2d at 3), in contrast to Jonathan's resignation.

■ Finally, Sherry suggests the trial court failed to give adequate

consideration to the fact Jonathan filed his petition to reduce child support within a month of leaving the firm. It is generally true a petitioner must delay filing his petition until the changes in his financial status have become "substantial." *In re Marriage of Pedersen*, 237 Ill. App. 3d 952, 957, 605 N.E.2d 629, 633 (1992). However, as this court has recently recognized, it makes sense to file such a petition early, as a reduction in support payments can only be retroactive to the date the petition was filed. *Horn*, 272 Ill. App. 3d at 477-78, 650 N.E.2d at 1107. Where it is readily apparent a change in circumstances is likely to be protracted or even permanent, the trial court may properly consider a petition filed soon after a change in circumstances has occurred. See *Horn*, 272 Ill. App. 3d at 478, 650 N.E.2d at 1107 (long history of labor strife made a protracted strike more likely, justifying the trial court's consideration of a petition to reduce support payments filed three days after strike began). Here, there was little chance Jonathan would be returning to his former firm, given the continuing business relationship between the firm and Gardner and the willingness displayed by Sherry's husband to use that relationship to influence the outcome of disputes between Sherry and Jonathan.

In sum, Sherry has failed to demonstrate the trial court's finding Jonathan did not leave the firm for the purpose of evading his child support obligations was against the manifest weight of the evidence. Given the letter admittedly sent by Sherry's husband to Jonathan's former firm and the pressures placed on Jonathan as a result, the trial court was justified in concluding Jonathan's change in employment was made in good faith. None of the cases cited by Sherry suggest the trial court erred in any respect.

For the reasons stated, we affirm the judgment of the trial court.

Affirmed.

GREEN and STEIGMANN, JJ., concur.