*In re* MARRIAGE OF DEBORAH L. ROSS, Petitioner-Appellant, and SCOTT A. ROSS, Respondent-Appellee.

Fifth District   No. 5—03—0613

Opinion filed February 16, 2005.

C. Stephen Swofford, of Campbell, Black, Carnine, Hedin, Ballard & McDonald, P.C., of Mt. Vernon, for appellant.

Jay J. Zanton, of Law Office of Jay J. Zanton, of Centralia, for appellee.

JUSTICE HOPKINS delivered the opinion of the court:

The petitioner, Deborah L. Ross, filed a petition to modify her child support obligation and her visitation privileges with the parties' two minor children, MacKenzie, born September 6, 1993, and Megan, born March 27, 1997. On appeal, Deborah argues that the circuit court erred in refusing to modify her child support obligation, in declining to order visitation privileges to her parents, in determining the place of the exchange for the children's visitation, and in reducing her visitation with the children.

We affirm.

## FACTS

On September 5, 2000, the circuit court entered its judgment for the dissolution of the parties' marriage. In its judgment, the circuit court designated the respondent, Scott A. Ross, as the custodial parent for MacKenzie and Megan, ordered Deborah to pay child support of $440 per month, and awarded Deborah visitation pursuant to the following schedule: (1) every other weekend from Friday at 6 p.m. to Sunday at 6 p.m., (2) holidays during alternating years, (3) Mother's Day, (4) one week in June, July, and August, for a total of three weeks, and (5) one half of Christmas vacation and any extended spring break period. On February 2, 2001, the court amended its order to allow Deborah the following additional visitation: (1) every Wednesday from 4:30 p.m. to 8 p.m., (2) one additional week in June, for a total of two weeks in June, and (3) one additional week in July, for a total of two weeks in July.

On May 30, 2003, Deborah filed a petition to modify visitation and child support. In the petition, Deborah alleged that she was moving to Indianapolis, Indiana, and she requested that the court modify the visitation schedule and establish procedures for transporting the children for visitation. Deborah further alleged that she had changed employment, which resulted in a substantial change in circumstances, and she requested that the circuit court modify her child support obligation. In his response, Scott requested that the court deny Deborah's petition to reduce her child support obligation because Deborah had quit her employment without appropriate cause or justification.

On August 18, 2003, at the hearing on Deborah's petition to modify visitation and child support, Deborah testified that she had moved to Indianapolis, Indiana, approximately seven weeks before the hearing. Deborah testified that she had been previously employed by North American Lighting in Salem, Illinois, earning approximately $12.40 per hour and working from 7 a.m. to 4 p.m. Deborah testified that she had also worked at Farm Fresh, where she earned $6.25 per hour and worked from 4:30 p.m. to 10 p.m. Deborah testified that in 2002, she earned $28,000 from North American Lighting and $7,000 from Farm Fresh.

Deborah testified that she had worked at North American Lighting for 15 years when she resigned her position on June 13, 2003. Deborah testified that from October 1994 through June 2003, she had not been promoted at North American Lighting and did not see a future prospect for advancement at North American Lighting or at Farm Fresh. Deborah testified that she sought employment in Marion County but was unsuccessful. Deborah testified that although she considered St. Louis and Springfield in her search for new employment, she did not send resumes to employers located in St. Louis or Springfield.

Deborah testified that she moved to Indianapolis because of its additional opportunities and because of the continuing strife between her and Scott. Deborah also testified that she was dating a gentleman who lived in Indianapolis. Deborah testified that she was unemployed from June 13, 2003, to July 13, 2003, but that on July 13, 2003, she began working as an administrative assistant for Crane America, earning $11 per hour. Deborah testified that she considered her current employment as a transition job while she sought other employment. Deborah testified that she would not seek a second job because she planned to attend one of the many universities located within 30 minutes of her home in Indianapolis to obtain a bachelor's degree in social work or business.

Deborah testified that the driving time between Salem and her Indianapolis home was approximately 2½ hours. Deborah testified that the halfway point between Salem and Indianapolis was Terre Haute at exit seven on Interstate 70. Deborah testified that after moving to Indianapolis, she visited the children on the weekends but was unable to visit them on Wednesdays because of the distance involved. Deborah testified that the relationship between her parents and her children was good, although her parents only visited upon Deborah's initiative because Scott did not allow visitation between her parents and the children. Deborah testified that she wanted her parents to exercise her Wednesday visitation.

Scott testified that when Deborah lived in Marion County, she exercised her weekend and Wednesday visitation. Scott testified that when Deborah moved to Indianapolis, she exercised her visitation during the summer, and the children missed two to three weeks of swimming lessons, ball games, and bible school. Scott testified that since Deborah's move to Indianapolis, he did not facilitate visitation with Deborah's parents because they never asked to visit the children. Scott testified that he worked the night shift at North American Lighting in Salem on Sunday through Thursday, from 10:30 p.m. to 6:30 a.m., but that on Sunday evenings, he often began at 6:30 p.m. for the start-up shift.

After the hearing, the circuit court found that Deborah left the job in which she had worked for 15 years to move to Indianapolis, away from her parents and her children, relinquishing a good-paying job and Wednesday night visits. The circuit court characterized Deborah's testimony concerning her plans for future education as vague and uncertain. The circuit court characterized Deborah's explanation for choosing Indianapolis, *i.e.*, job advancement, as not credible in light of similar, and closer, opportunities in Springfield or St. Louis. The circuit court also noted that due to a modification of the new guidelines, Deborah's support obligation would be modestly reduced in any event. The circuit court encouraged Scott to allow visitation with Deborah's parents but declined to order it in light of recent holdings of the Illinois Supreme Court. See *Wickham v. Byrne*, 199 Ill. 2d 309 (2002).

In its September 4, 2003, order, the circuit court held that Deborah's change in employment had not been made in good faith, and the court denied Deborah's request to decrease her child support obligation. The circuit court granted Deborah's request to modify visitation and awarded Deborah the following visitation:

1. The first and third weekends of every month, from 7:30 p.m. on Friday until 4:30 p.m. on Sunday.

2. Labor Day weekend, Columbus Day weekend, Martin Luther King Day weekend, Presidents' Day weekend, and Easter weekend, from Friday at 7:30 p.m. until Monday at 4:30 p.m.

3. Thanksgiving weekend, from Thanksgiving Day at 4 p.m. until Sunday at 4:30 p.m.

4. From Christmas Day at 4 p.m. until December 30 at 4:30 p.m.

5. Fourteen consecutive days after school is completed for summer break.

6. Twenty-one days at the end of summer prior to school commencement for the fall semester.

The court ordered that the parties exchange the children in Effingham, Illinois.

On October 3, 2003, Deborah filed her timely notice of appeal.

ANALYSIS

Deborah's Petition to Modify Child Support

Deborah argues that the circuit court erred in finding that her job change had not been made in good faith and in refusing to modify her child support obligation.

The decision to grant or deny a petition to modify an award for child support lies within the sound discretion of the circuit court, and this court will not disturb the circuit court's decision on appeal absent an abuse of discretion. *In re Marriage of Horn*, 272 Ill. App. 3d 472, 476 (1995).

■ The circuit court's order for child support may be modified upon a showing of a substantial change in circumstances. 750 ILCS 5/510(a) (West 2002). "A good-faith, voluntary change in employment which results in diminished financial ability may constitute a substantial change in circumstances justifying a reduction in child support payments. [Citation.]" *In re Marriage of Horn*, 272 Ill. App. 3d at 476. The crucial consideration, to determine if a decision was made in good faith, is whether the change was prompted by a desire to evade financial responsibilities for supporting the children or to otherwise jeopardize their interests. *In re Marriage of Hardy*, 191 Ill. App. 3d 685, 690 (1989). "The party seeking the modification must present evidence of a motive, other than evasion of financial responsibilities for support of the children, in support of the petition for modification. [Citation.]" *In re Marriage of Horn*, 272 Ill. App. 3d at 476-77; *In re Marriage of Imlay*, 251 Ill. App. 3d 138, 142 (1993). "Unless good faith is shown, a voluntary termination of employment by a supporting spouse is not considered a material change in circumstances sufficient to warrant abatement or modification of support obligations. [Citation.]" *In re Marriage of Dall*, 212 Ill. App. 3d 85, 95-96 (1991).

■ The evidence demonstrated that Deborah left a higher-paying job to move 2½ hours away from her children, to move away from her parents, to accept a lower-paying, transition job, and to consider pursuing her education in an undecided field at an undecided college. Although relief has been granted to a payor spouse who leaves his employment to pursue his education (*Graham v. Graham*, 21 Ill. App. 3d 1032, 1037 (1974) (the payor spouse acted in good faith because his efforts to better his academic bargaining position had commenced five years before his request and the university imposed a condition for the payor spouse to obtain his degree or forfeit five years of effort and a note with interest)), the circuit court found that Deborah's expressed

desires to continue her education were vague, inconclusive, and not credible. The circuit court also found that Deborah's expressed motive regarding the opportunities available in Indiana was not credible because Deborah failed to seek employment in St. Louis or Springfield, which were located close by and offered similar opportunities. Deborah failed to present credible evidence of a motive, other than the evasion of financial responsibilities for the support of the children, to sustain her petition for a modification. We find that the circuit court did not abuse its discretion in finding that Deborah's change of employment had not been made in good faith.

## Deborah's Visitation

■ Deborah argues that the circuit court abused its discretion in directing the parties to exchange the children in Effingham and in reducing Deborah's weekend visitation—reducing the number of visitation weekends in a year and reducing the number of hours during each weekend by three. We disagree.

Visitation orders will not be disturbed on appeal absent an abuse of discretion. *Kocal v. Holt*, 229 Ill. App. 3d 1023, 1027 (1992); *Doggett v. Doggett*, 51 Ill. App. 3d 868, 872 (1977). "The court may modify visitation rights if, due to a change in circumstances, it appears reasonable and proper to do so and if the best interests of the child make it advisable. [Citations.]" *Doggett*, 51 Ill. App. 3d at 872-73.

To support her argument, Deborah cites section 607(a) of the Illinois Marriage and Dissolution of Marriage Act, which provides:

"A parent not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger seriously the child's physical, mental, moral[,] or emotional health." 750 ILCS 5/607(a) (West 2002).

A restriction of visitation, which must meet the serious-endangerment standard, is an action that limits, restrains, or confines visitation; for example, a termination of visitation, a prohibition on overnight visitation, or a requirement of supervised visitation. *In re Marriage of Lee*, 246 Ill. App. 3d 628, 645 (1993). A reduction of weekend and summer visitation is not considered a restriction of visitation. *In re Marriage of Wycoff*, 266 Ill. App. 3d 408, 416 (1994); *In re Marriage of LaTour*, 241 Ill. App. 3d 500, 504 (1993).

The circuit court did not abuse its discretion in modifying Deborah's visitation schedule. The circuit court awarded Deborah visitation during the first and third weekends of every month from 7:30 p.m. on Friday until 4:30 p.m. on Sunday, various three-day holiday weekends from 7:30 p.m. on Friday until 4:30 p.m. on Monday, Thanksgiving weekend and Christmas week, and a total of five weeks during the children's summer vacation. The circuit court's award of visitation to

Deborah was unrestricted and was certainly reasonable in light of Deborah's voluntary, out-of-state move, the additional driving distance involved, and Scott's work schedule.

The circuit court also did not abuse its discretion in directing the parties to exchange the children in Effingham, Illinois, which is located between Indianapolis and Salem, as opposed to Deborah's requested exchange point in Terre Haute, Indiana. See *Kocal*, 229 Ill. App. 3d at 1027 (the court did not abuse its discretion when it ordered the father to pick up the child in the mother's hometown rather than a town closer to the father's home); *Doggett*, 51 Ill. App. 3d at 872 (the court did not abuse its discretion in requiring the appellant to deliver the children to the former husband's home and call for them at the completion of each visitation period). We affirm the circuit court's order modifying Deborah's visitation privileges.

### Grandparent Visitation

■ Deborah argues that the circuit court erred in refusing to order grandparent visitation with her parents. In her petition to modify, Deborah failed to include a request for grandparent visitation in the prayer for relief. However, the failure to obtain leave to add a prayer for relief against a party already before the court is not a jurisdictional defect. *Ragan v. Columbia Mutual Insurance Co.*, 183 Ill. 2d 342, 354 (1998) (technical defects in pleadings should not prevent courts from doing justice between parties). We choose to address the issue.

In *Wickham v. Byrne*, the Illinois Supreme Court held that sections 607(b)(1) and 607(b)(3) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/607(b)(1), (b)(3) (West 2000)), providing for court-ordered grandparent visitation privileges, were facially unconstitutional because the statute violated a parent's due process right to make decisions concerning the care, custody, and control of his child without unwarranted state intrusion. *Wickham v. Byrne*, 199 Ill. 2d 309, 322 (2002) ("a fit parent's constitutionally protected liberty interest to direct the care, custody, and control of his or her children mandates that parents—not judges—should be the ones to decide with whom their children will and will not associate"). The court stated that state interference with fundamental parental child-rearing rights is justified only in limited instances to protect the health, safety, and welfare of children, such as required testing and immunizations for children and the prohibition against child labor. *Wickham*, 199 Ill. 2d at 317. The court held that grandparent visitation does not involve a threat to the health, safety, or welfare of children and that, therefore, the state's interference with fundamental parental child-rearing rights was not justified. *Wickham*, 199 Ill. 2d at 317-18.

Thereafter, in *In re M.M.D.*, the Illinois Supreme Court held that although the constitution prohibits the state from forcing fit parents to yield visitation rights to a child's grandparents when the parents do not wish to do so, there is no corresponding constitutional prohibition against a fit parent's decision to voluntarily bestow visitation privileges on his child's grandparents. *In re M.M.D.*, 213 Ill. 2d 105, 115 (2004). The court held, "The constitutional protections afforded parenthood therefore obligate the courts to uphold voluntary visitation agreements made by fit parents, not declare them invalid." *In re M.M.D.*, 213 Ill. 2d at 116. Accordingly, because the father had entered into a voluntary visitation agreement with the deceased mother's parents, the court held that, despite its prior decision in *Wickham*, the consent decree was not void and unenforceable as a matter of law. *In re M.M.D.*, 213 Ill. 2d at 116-17 (the order allowing grandparent visitation merely gave effect to the parent's own wishes).

In the present case, Deborah and Scott have not entered into a voluntary agreement granting visitation privileges to Deborah's parents. Instead, Deborah argues that the circuit court should have ordered grandparent visitation pursuant to the common law that existed before the unconstitutional grandparent visitation statute was enacted. We disagree.

Whether court-ordered grandparent visitation is allowed, pursuant to the common law that existed prior to the enactment of the unconstitutional grandparent visitation statute, is disputed. *Beurksen v. Graff*, 351 Ill. App. 3d 148 (2004); *In re Marriage of Sullivan*, 342 Ill. App. 3d 560 (2003). In *In re Marriage of Sullivan*, the Second District Appellate Court held that, despite the unconstitutionality of the grandparent visitation statute, the noncustodial father had the right to petition the court to modify his visitation rights so that his family could visit his son while he served in the military overseas. *In re Marriage of Sullivan*, 342 Ill. App. 3d at 564-65. The court held that the common law prior to the enactment of the unconstitutional statute would have allowed the father's parents to visit his child in his absence because of the "special circumstances." *In re Marriage of Sullivan*, 342 Ill. App. 3d at 565. The court distinguished *Wickham*, stating that because the father, as opposed to a grandparent, had petitioned the court for grandparent visitation, the case did not require a judge to decide the best interests of a child between a fit parent and a nonparent but, instead, involved the trial court's weighing of the wishes of two fit parents to determine the child's best interests. *In re Marriage of Sullivan*, 342 Ill. App. 3d at 565.

The grandparent visitation statute that *Wickham* held was facially unconstitutional authorized the court to order visitation privileges to

a grandparent when "one of the parents joins in the petition with the grandparents." 750 ILCS 5/607(b)(1)(D) (West 2000). We therefore fail to reconcile the court's distinction in *In re Marriage of Sullivan* with the Illinois Supreme Court's declaration in *Wickham* that no set of circumstances existed under which the statute could validly authorize a court to order grandparent visitation against a parent's wishes because that court-ordered visitation would violate a parent's constitutionally protected liberty interest to direct the care, custody, and control of his children without unwarranted state intrusion. *Wickham*, 199 Ill. 2d at 322 (grandparent visitation statute was facially unconstitutional); *In re C.E.*, 161 Ill. 2d 200, 210-11 (1994) (a statute is facially unconstitutional if " 'no set of circumstances exists under which the Act would be valid,' " quoting *United States v. Salerno*, 481 U.S. 739, 745, 95 L. Ed. 2d 697, 707, 107 S. Ct. 2095, 2100 (1987)).

The special circumstances for which the common law authorized the courts to order grandparent visitation (*Boyles v. Boyles*, 14 Ill. App. 3d 602 (1973) (the mother died); *Lucchesi v. Lucchesi*, 330 Ill. App. 506 (1947) (the father died and the grandparents were trustees); *Solomon v. Solomon*, 319 Ill. App. 618 (1943) (the father was stationed away in the armed forces)) were similar to those circumstances delineated in the statute that *Wickham* declared to be unconstitutional. 750 ILCS 5/607(b) (West 2000) (visitation is allowed if a parent is deceased, if one of the parents joins in the petition with the grandparents, or if the parents are not cohabiting on a permanent or an indefinite basis). We are inclined to agree with the First District Appellate Court in *Beurksen*, 351 Ill. App. 3d 148. In *Beurksen*, the court cited with approval Justice Slater's appellate court dissent in *In re M.M.D.*, which stated that court-ordered grandparent visitation infringed upon the parent's fundamental right to raise his child and could not be retroactively legitimized by reliance on resurrected common law principles. *Beurksen*, 351 Ill. App. 3d at 150 (relying on *In re M.M.D.*, 344 Ill. App. 3d 345, 349 (2003) (Slater, J., dissenting)).

The statute authorizing the court to order grandparent visitation privileges, against a parent's wishes, was declared unconstitutional (*Wickham*, 199 Ill. 2d at 317-18), and the prior common law that authorized the same is equally unconstitutional. In the present case, unlike *In re M.M.D.*, we do not have a consent decree that voluntarily bestows visitation privileges to the children's grandparents. We cannot, therefore, under the guise of the common law, authorize that which the supreme court has declared unconstitutional. See *Beurksen*, 351 Ill. App. 3d at 150. Accordingly, the circuit court properly denied Deborah's request for grandparent visitation.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Marion County is affirmed.

Affirmed.

WELCH and CHAPMAN, JJ., concur.