NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 190573-U

NO. 4-19-0573

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 7, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| JENNIFER COLEMAN, n/k/a JENNIFER SNELL, | ) | Circuit Court of |
| Petitioner-Appellee, | ) | Livingston County |
| and | ) | No. 08D110 |
| MARK A. COLEMAN JR., | ) | |
| Respondent-Appellant. | ) | |
| | ) | Honorable |
| | ) | Robert M. Travers, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Presiding Justice Steigmann and Justice Holder White concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The appellate court affirmed, holding the trial court did not err in finding respondent failed to show he acted in good faith when he voluntarily changed jobs and, therefore, he did not show a substantial change in circumstances sufficient to warrant modifying child support.

¶ 2     Respondent, Mark A. Coleman Jr., appeals the trial court's denial of his amended petition to modify his child support obligations based upon substantial changes in circumstances, namely his changed employment and reduced income.

¶ 3     On appeal, Mark argues the trial court abused its discretion by denying his petition to modify child support because the court's finding that he did not act in good faith when voluntarily changing employment stands contrary to the manifest weight of the evidence. We disagree and affirm the trial court's judgment.

¶ 4                              I. BACKGROUND

¶ 5        Mark and petitioner, Jennifer Coleman, n/k/a Jennifer Snell, married on May 25, 2002, in Livingston County, Illinois. The marriage produced two children, K.C. and T.C., born in 2003 and 2006 respectively. When Mark and Jennifer divorced in 2009, the trial court's judgment for dissolution required Mark to pay child support for his dependent children. At the time of the divorce, Mark worked full-time as a civil engineer with Alfred Benesch & Company in Chicago, Illinois, while attending Loyola University Chicago School of Law part-time. When Mark graduated from law school in 2010, he continued working as an engineer, but he began providing legal counsel to his employer. Despite his dual role as engineer and attorney, Mark began looking for jobs solely as an attorney in 2010, focusing his search on the St. Louis and Chicago areas.

¶ 6        In 2014, Mark began working as a civil engineer and attorney for Gewalt Hamilton Associates, Inc. (Gewalt Hamilton), in Vernon Hills, Illinois. As Mark's income increased over the years, the trial court modified the original child support order. Mark's 2018 earnings totaled $111,286, making his biweekly child support payments approximately $842.46.

¶ 7        While considering a potential job opportunity with a Texas law firm in 2018, Mark contacted his attorney, Tom Brucker, and over the course of their conversation Brucker expressed his desire to sell his law firm, Weeks & Brucker, Ltd. (Weeks & Brucker), which is located in Fairbury, Illinois. The men began negotiating an agreement allowing Mark to buy the firm and begin practicing law there full-time. On June 1, 2019, Mark entered into a stock purchase agreement with Weeks & Brucker whereby he would purchase 100% of the firm's stock for $175,000, paid in monthly installments over 10 years at 4% interest (approximately $1772 per month).

¶ 8      Under the stock purchase agreement, Mark would be paid a fixed yearly salary of $65,000 for 10 years. He would receive no commissions and no overtime. His pay would not be based on billable hours. The agreement provided that Mark could receive a bonus if the firm earned more than $40,000 in fees from a case but only at the discretion of the other named partners. Certified Public Accountant Dan Toner valued Weeks & Brucker for purposes of the stock purchase agreement and also set Mark's salary at $65,000 per year for 10 years. Toner made no written documentation showing his calculations or what metrics he used to value the firm or fix Mark's salary.

¶ 9      Under the stock purchase agreement, as a benefit of his bargain, Mark would receive 10 years worth of training and mentoring from attorneys Brucker and Weeks. Mark, however, would not own any firm stock until he paid the total purchase price, plus interest, over those 10 years. At that time, Mark would own the firm's cases, stock forms, and agreements. He would not, however, own the firm's assets or building. Mark began working for what is now Weeks, Brucker & Coleman, Ltd., on the date he entered into the stock purchase agreement— June 1, 2019.

¶ 10      Just a few weeks later, on June 19, 2019, Mark filed an amended petition to modify child support. Citing his changed employment, reduced income, and student loan debts, Mark alleged a substantial change in circumstances warranted reducing the amount of his child support obligation.

¶ 11      The trial court held a hearing on Mark's petition on August 6, 2019. Despite receiving notice of the hearing, Jennifer did not appear at the hearing but was represented by counsel. Mark attended the hearing, represented by counsel.

¶ 12		Mark testified that he decided to leave his job at Gewalt Hamilton, where he made upwards of $111,000 in 2018 and where he anticipated a raise in 2019, to take a job at Weeks & Brucker making a fixed salary of $65,000 per year for 10 years, for "a lot of reasons." He claimed he was motivated to change jobs because he wanted to practice law full-time, he wanted to own his own business, he wanted legal training from experienced attorneys with diverse specialties, he wanted to return to where he was raised, and he wanted to live in a smaller community because he did not like the suburbs or Chicago. Mark testified he was "not trying to evade" his child support obligations.

¶ 13		On cross-examination, Mark claimed he was at risk of being laid off by his former employer because his division underperformed during the first quarter of 2019. But he acknowledged Gewalt Hamilton had not announced any layoffs, nor had he been told he might be laid off. Mark testified he focused his job search on Chicago, St. Louis, and Texas. He acknowledged he had not looked for any legal jobs in Livingston County until he began negotiating to purchase Weeks & Brucker in 2018.

¶ 14		Upon examination from the trial court, Mark testified that when he initially decided to change jobs, he was not looking to move home and practice at Weeks & Brucker. Rather, he stated he was only looking for a chance to practice law. As for his salary, Mark testified he agreed to a fixed $65,000 per year salary on good faith that Weeks & Brucker would increase his salary as the firm's business improved. The court also inquired about the details of the stock purchase agreement and Mark responded to those inquiries with his "understanding of the agreement."

¶ 15		In support of his petition to modify child support, Mark submitted seven exhibits, including: his Gewalt Hamilton pay stubs from January 1 to June 1, 2019; pay stubs dated June 1

to August 2019 from Weeks, Brucker, & Coleman, Ltd.; his 2018 W-2; his monthly student loan bills; a calculation showing the nearly 42% reduction in his salary; and a calculation demonstrating what Mark's child support obligation would be ($821.44 per month) based on his current salary. Mark did not provide a copy of the stock purchase agreement.

¶ 16     After hearing argument from both parties, the trial court rendered its decision on the record. The court found Mark voluntarily changed jobs, observing Mark "simply had a change of heart in relation to his employment." Mark was not going to be losing his job, but he "decided that he wanted to have new employment." The court concluded: "So, there's no question here that this was a voluntary act on the part of [Mark]." The court then considered whether Mark acted in good faith when voluntarily changing jobs. The court rejected Mark's claims that he took the job at Weeks & Brucker in order to return to where he grew up and get legal training from attorneys he had known since childhood, noting that before Mr. Brucker offered to sell the practice Mark had been looking for jobs in Chicago and St. Louis. The court found Mark's "motive is somewhat questionable in this instance." The court, therefore, concluded Mark did not satisfy his burden of showing he acted in good faith when changing employment and denied the petition to modify child support.

¶ 17     On August 13, 2019, the trial court issued a final, appealable order detailing its findings and decision at the hearing. As is relevant here, the court's order gave the two necessary findings: (1) "The Court finds that Respondent[] changed jobs voluntarily" and (2) "[T]he Court finds the 41.59% decrease in salary is considered underemployment nor does it meet the good-faith standard necessary to substantiate a substantial change in circumstances."

¶ 18     This appeal followed.

¶ 19                                   II. ANALYSIS

¶ 20 Mark contends the trial court abused its discretion when denying his petition to modify child support because the court's finding that Mark did not act in good faith proved contrary to the manifest weight of the evidence. He also asserts the trial court's decision contravenes law and precedent. We disagree.

¶ 21 The decision of whether "there has been a substantial change in circumstances sufficient to warrant the modification of child support lies within the trial court's discretion and will not be disturbed absent an abuse of discretion." *In re Marriage of Turrell*, 335 Ill. App. 3d 297, 307, 781 N.E.2d 430, 440 (2002). A trial court abuses its discretion when "modify[ing] a child-support obligation only when no reasonable person would agree with the court's decision." *In re Marriage of Deike*, 381 Ill. App. 3d 620, 630, 887 N.E.2d 628, 637 (2008).

¶ 22 Illinois law allows a party to "request a modification of his or her child support obligations based on a substantial change of circumstances." *In re Marriage of Barnard*, 283 Ill. App. 3d 366, 369, 669 N.E.2d 726, 729 (1996); 750 ILCS 5/510(a)(1) (West 2018). It is well established "that a good-faith, voluntary change in employment which results in diminished financial ability may constitute a substantial change in circumstances justifying a reduction in child support payments." *In re Marriage of Mitteer*, 241 Ill. App. 3d 217, 224, 608 N.E.2d 607, 611-12 (1993). A trial court measures whether a party acted in good faith when voluntarily changing employment by considering "whether the change was driven by a desire to evade financial responsibility for supporting the children." *Barnard*, 283 Ill. App. 3d at 369. The party seeking to reduce "child support payments bears the burden of demonstrating a proper motive"— *i.e.*, he or she acted in good faith when voluntarily changing jobs. *Barnard*, 283 Ill. App. 3d at 369-70.

¶ 23    The good-faith determination is a fact question for the trial court; consequently, a reviewing court will "not reverse a trial court's finding of good faith (or lack thereof), unless it is against the manifest weight of the evidence." *Barnard*, 283 Ill. App. 3d at 370. "A [decision] is against the manifest weight of the evidence when the opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on the evidence." *In re Marriage of Levinson*, 2012 IL App (1st) 112567, ¶ 33, 975 N.E.2d 270. When evaluating whether a good-faith finding goes against the manifest weight of the evidence, "we emphasize the superior position of the trial court in these matters and the great deference we must accord the trial court's findings." *Barnard*, 283 Ill. App. 3d at 371. This court defers "to the trial court as the finder of fact because it is in the best position to observe the conduct and demeanor of the parties and witnesses." *Best v. Best*, 223 Ill. 2d 342, 350, 860 N.E.2d 240, 245 (2006). "A reviewing court will not substitute its judgment for that of the trial court regarding the credibility of witnesses, the weight to be given to the evidence, or the inferences to be drawn." *Best*, 223 Ill. 2d at 350-51.

¶ 24    Here, the trial court's finding that Mark did not act in good faith when he voluntarily changed jobs and took a 41.59% pay cut does not go against the manifest weight of the evidence. Mark testified he risked being laid off from Gewalt Hamilton because his division underperformed during the first quarter of 2019. But he also testified the company had not announced any layoffs and no one told him he might be laid off. Besides his own point of view about company performance, Mark provided no other evidence he might be laid off, *i.e.*, that similar underperformance previously led to staff reductions or even pay cuts at Gewalt Hamilton. In fact, Mark testified he anticipated a raise in 2019, even with his division underperforming. This conflicting testimony does not allow a court to reasonably infer that impending layoffs prompted Mark's decision to change jobs.

¶ 25     Mark also gave inconsistent testimony about why he ultimately chose to work at Weeks & Brucker. Even though Mark testified he changed jobs because he wanted to move home, live in a small community, and be trained by Mr. Brucker, whom he had known since age 13, he also testified he did not look for legal jobs in Livingston County before he talked with Mr. Brucker in 2018, despite looking for a full-time job as an attorney since 2010. Indeed, Mark testified that he focused his job search on Chicago, St. Louis, and Texas. All told, Mark's conflicting testimony led the trial court to question his motive for changing jobs.  Likewise, the trial court questioned Mark's decision to take "a loss of $46,000, not including the raise that he was anticipating or any bonuses," and fix his salary at $65,000 per year for an entire decade, which just happened to coincide with the end of any obligation he might have for the educational expenses of a nonminor child. The court noted "there is no potential for increased earnings" over 10 years except for the potential "generosity of Mr. Brucker and Mr. Weeks for which we've had no testimony." The trial court noted Mark did not provide the court with a copy of the stock purchase agreement but provided only "[his] recitation of what his understanding is of the terms of that agreement." The trial court sits as the fact finder who judges credibility and weighs the evidence. *Best*, 223 Ill. 2d at 350-51. The court rejected Mark's self-serving testimony, and this court will not disturb that determination.

¶ 26     Contrary to Mark's claims, there was ample evidence to support the trial court's finding he did not act in good faith by changing jobs voluntarily, taking a 42% pay cut, and locking his salary at $65,000 for 10 years. Based on the record, we are unable to conclude the above evidence leads to the opposite conclusion that Mark acted in good faith. Accordingly, the trial court's good-faith finding is reasonable, does not stand against the manifest weight of the evidence, and does not amount to an abuse of discretion.

¶ 27    Apart from attacking the trial court's factual determinations, Mark challenges the trial court's decision on legal grounds, alleging it "flies in the face of" precedent. He likens his situation to the one presented in *In re Marriage of Kowski*, 123 Ill. App. 3d 811, 463 N.E.2d 840 (1984), a spousal maintenance case where this court reversed a trial court's finding a husband did not act in good faith when he quit his job paying him $30,000 per year to purchase a new company and limit his yearly salary to $18,000. Though we see obvious surface-level similarities between these cases, after digging deeper we find *Kowski* distinguishable. There, the husband's prior company was purchased by new owners who changed and increased the husband's work but did not increase his pay. Moreover, the changes at the husband's work impaired his health and required him to seek ongoing medical care. *Kowski*, 123 Ill. App. 3d at 812. No such changes occurred here for Mark. He reported no change in his responsibilities at Gewalt Hamilton, and he anticipated a raise in 2019. And there is no evidence Mark's prior employment at Gewalt Hamilton impaired his health. In *Kowski*, the husband opted to purchase a business rather than look for a different job because he concluded his age (55 years old) made "an extended job search to find comparable employment at a similar salary level *** fruitless" when others younger than he could not find jobs in the field. *Kowski*, 123 Ill. App. 3d at 816. The opposite occurred here. Mark, who is still a young man, engaged in an extended job search from 2010 to 2019 before deciding to purchase Weeks & Brucker. Indeed, there is no evidence he sought to purchase a law firm before he talked with Mr. Brucker in 2018. Finally, the husband in *Kowski* purchased a business that allowed him to do work like what he previously did for his prior employer. *Kowski*, 123 Ill. App. 3d at 812-13. Here, Mark decided to purchase a business—a small-town general practice law firm—outside his areas of expertise, *e.g.*, civil engineering and corporate counsel. These factual differences pull this case from *Kowski*'s orbit. Since this case

does not merit the same result as *Kowski*, the trial court did not abuse its discretion in finding Mark failed to show he acted in good faith.

¶ 28 Finally, Mark argues the trial court's written order "has no basis in law and is a total abuse of discretion" because it improperly inserts a factor into the good-faith analysis. From the written order—drafted by Mark's counsel—it appears the trial court considered an improper factor in the good-faith determination, specifically whether Mark conferred with Jennifer before changing jobs. But when taken in context, the court's statement that Mark made a unilateral decision to change jobs without any input from Jennifer was actually part of the court's voluntariness analysis, not the good-faith assessment. The court stated: "So, there's no question here that this was a voluntary act on the part of [Mark], that he understood exactly what he was doing and he decided to do it and apparently without any input from mother, simply a unilateral decision on his part to change employment." We, therefore, find Mark's argument disingenuous and reject it. The trial court did not consider an improper factor in the good-faith analysis and did not abuse its discretion in denying Mark's petition to modify child support.

¶ 29 III. CONCLUSION

¶ 30 For the reasons stated, we affirm the trial court's judgment.

¶ 31 Affirmed.