**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 240144-U

Order filed October 30, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| DONIELLE KINSELLA, | ) | Will County, Illinois, |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | Appeal No. 3-24-0144 |
| v. | ) | Circuit No. 18-D-1016 |
| | ) | |
| MICHAEL KINSELLA, | ) | |
| | ) | Honorable |
| Respondent-Appellant. | ) | Derek W. Ewanic, |
| | ) | Judge, presiding. |

_____

JUSTICE HETTEL delivered the judgment of the court.
Justices Peterson and Anderson concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:  (1) The circuit court properly denied respondent's motion to modify child support. (2) The circuit court abused its discretion in granting petitioner's request to set expenses. (3) The amount that the circuit court awarded in attorney fees was proper.

¶ 2     On November 19, 2021, the circuit court of Will County entered a judgment of dissolution of marriage (dissolution judgment) between petitioner, Donielle Kinsella, and respondent, Michael Kinsella. Following the dissolution judgment, Donielle filed a motion that contained a request to

allocate expenses that she had incurred for the parties' children, and Michael filed both a motion to modify his child support obligation under the dissolution judgment and a petition for attorney fees. The circuit court granted Donielle's request to allocate the children's expenses, denied Michael's motion to modify his child support obligation, and awarded Michael a portion of his attorney fees. For the following reasons, we affirm the court's order denying Michael's motion to modify child support and the award of attorney fees, and vacate in part the court's ruling allocating the children's expenses.

¶ 3                                    I. BACKGROUND

¶ 4        The parties were married on June 18, 2005, and have two children: Q.K., born August 16, 2008, and M.K., born July 29, 2010. On June 18, 2018, Donielle filed a petition for dissolution of marriage. Shortly thereafter, the circuit court entered a temporary agreed order that required the parties to "equally divide all of [the] children's expenses, including medical, dental, counseling, extra-curricular activities, school expenses, etc. ***."

¶ 5        On November 19, 2021, following a trial in which the parties represented themselves, the circuit court entered the dissolution judgment and found therein that Donielle had earned $91,000 in 2020, that Michael had earned approximately $159,000 in that same year, and that the level of income of each party was expected to continue. The court ordered Michael to pay Donielle $1,649 per month in child support. The court also found that Michael was in arrears on his payment of the children's expenses pursuant to the temporary agreed order and further ordered him to pay Donielle an additional $250 per month, starting December 1, 2021, until he paid his arrearage in full. The dissolution judgment was silent as to the allocation of the children's future expenses.

¶ 6        On November 17, 2022, Donielle filed a *pro se* emergency motion for rule to show cause (emergency motion) that alleged that Michael had violated the temporary agreed order by failing

to pay half of the $4,076.92 that she had incurred in medical and school expenses for the children between June 8 and November 6, 2022. Attached to the motion was a document reflecting prior written communications between the parties. In those communications, Donielle notified Michael of the medical and school expenses that she had incurred and his obligation to pay the expenses pursuant to "previous court orders," and Michael responded that the dissolution judgment already compelled him to pay a set monthly amount in basic child support, the purpose of which was "to cover [the] future children's expenses."

¶ 7        On December 15, 2022, Michael filed a motion to dismiss the emergency motion (motion to dismiss) and argued therein that the emergency motion failed to state a claim for relief because it was based on the terms of the temporary agreed order, which he contended was later terminated and superseded by the dissolution judgment. The motion to dismiss also included a request for attorney fees.

¶ 8        At a subsequent hearing on June 9, 2023, Donielle withdrew her emergency motion and presented a motion to set expenses, modify child support, and award other relief (motion for relief). In her motion for relief, Donielle stated that the circuit court did not allocate the children's future expenses in the dissolution judgment, yet argued that this omission was not "final" but instead "a curable and modifiable issue consistent with [sections 505 and 510 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/505, 510 (West 2022))]." Donielle pointed out that the dissolution judgment was also silent as to whether her payment of the children's health insurance premiums was considered in the determination of child support. Arguing that there had been a substantial change in circumstances following entry of the dissolution judgment, Donielle sought an award of child support that would require Michael to contribute to the children's health

3

insurance premiums and to pay all the unreimbursed children's expenses that had accrued (request to set expenses).

¶ 9        Also during the June 9, 2023, hearing, Michael withdrew all parts of his motion to dismiss other than his request for attorney fees. Upon leave granted by the circuit court, Michael later filed a petition in which he sought $6,050 in attorney fees (petition for attorney fees). On July 18, 2023, Michael also filed a motion to modify child support in which he argued that a substantial change in circumstances had occurred following the dissolution judgment, in that his income in 2021 through 2023 was "substantially less," whereas Donielle's income and the children's needs had "stayed substantially the same."

¶ 10        On September 22 and 25, 2023, an evidentiary hearing was held on Donielle's motion for relief and Michael's motion to modify child support. At the beginning of the hearing, the parties, who were each represented by an attorney, disputed the characterization of Donielle's request to set expenses. Donielle argued that the request was indeed to set expenses in the nature of child support pursuant to section 505 of the Act and that the circuit court had intended to allocate the expenses in the dissolution judgment but did not. Conversely, Michael argued that the request was akin to a motion to modify the dissolution judgment pursuant to section 510 of the Act. The court expressed that it had intended to allocate the children's future expenses in the dissolution judgment "but [had] inadvertently left it off," and ultimately determined that Donielle's request was one to set expenses rather than a motion to modify the dissolution judgment.

¶ 11        Following preliminary discussions, Nahum Jayesinghe, Michael's accountant, testified that he had prepared Michael's 2021 and 2022 federal and state income tax returns in conformity with the applicable tax laws and based on the information that Michael had provided, such as his bank statements, bills, past tax returns, and responses to certain questions. Jayesinghe further testified

4

that, although Michael had provided bank statements from the same bank for the last two years, he did not know whether Michael had provided all of his banking statements from every institution with which he banked. Additionally, Jayesinghe testified that Michael had also provided him with a chart that Michael had created that detailed his income, source of income, and expenses, but that Michael had not provided him with any general ledgers, profit and loss statements, or balance sheets related to the business that he had. Jayesinghe testified that, based on the information that Michael had provided, he believed that Michael was in the construction business and earned an income of $61,645 in 2021 and $64,116 in 2022.

¶ 12　　　　Donielle testified that she had generated a spreadsheet reflecting all the medical and school expenses that she had incurred for the children since the entry of the dissolution judgment through September 14, 2023. A copy of the spreadsheet was admitted into evidence. Donielle stated that Michael had never responded to her requests to reimburse her for the expenses reflected on the spreadsheet. She also acknowledged that the dissolution judgment did not allocate the children's future expenses and stated that Michael had "[brought this] to [her] attention" after she had first asked him to pay for certain expenses following the dissolution judgment.

¶ 13　　　　Michael testified that he specialized in concrete construction and had owned a construction company "at various times throughout [his] life," including Kinsella Custom Concrete, which he had owned since 2014. Michael explained that the amount of time that he worked fluctuated with the seasons, with his gross receipts being "generally down" during the winters and "up" during the summers.

¶ 14　　　　Michael further testified that he had prepared a financial affidavit dated June 1, 2023, that stated that his gross receipts in 2022 were $210,825.33 (financial affidavit). Michael also testified that he had prepared his 2021 and 2022 tax returns with Jayesinghe's help and had provided

Jayesinghe with all the documents that he had, "including all bank statements, all receipts, all compiled information as far as financials, copies of checks, carbon copies, all financials." Michael explained that he had reviewed these documents with Jayesinghe and truthfully answered all Jayesinghe's questions. As to the contents of his tax returns, Michael acknowledged that his 2021 tax return showed that his total income was $61,645 for that year and that his 2022 tax return showed that his total income was $64,116 and his gross receipts were $200,925 for that year. Michael explained that there was a discrepancy between the amounts in gross receipts that he had listed in his financial affidavit and 2022 tax return because he had prepared his financial affidavit on his own but his 2022 tax return with an accountant, Jayesinghe, who then "rechecked" the financial affidavit. Copies of Michael's financial affidavit and 2021 and 2022 tax returns were all admitted into evidence.

¶ 15 On cross-examination, Michael was shown an image of the website for Kinsella Custom Concrete. Michael acknowledged that the website showed that the company was located at 18849 South Palomino Drive, which was his former residential address, and that he "need[ed] to change this." Michael was also shown an image from the Illinois Secretary of State website that he further acknowledged stated that there was an active business entity named Kinsella LLC located at 1100 Cassie Drive, Joliet, Illinois 60435 (1100 Cassie Drive). Michael explained that 1100 Cassie Drive was the address of his parents' residential home, where he lived because he could not afford anything else. Michael also stated that Kinsella LLC was his father's business and that he did not know why the business was listed as active because his father was retired. The images of the websites for Kinsella Custom Concrete and the Illinois Secretary of State were also admitted into evidence.

¶ 16    At the close of the evidentiary hearing, the circuit court articulated numerous findings, including that Michael's testimony was neither "compelling nor credible," based on his answers and the manner in which he testified. Specifically, the court found that Michael was argumentative when answering "every question" asked by Donielle's counsel. The court also found that Michael's answers to the questions asked by both his and Donielle's counsel were nonresponsive, and that the documents that he presented contradicted one another. Regarding the income of each party, the court determined that any changes to either did not constitute a substantial change in circumstances such as to warrant a modification of child support. Accordingly, the court denied Michael's motion to modify child support.

¶ 17    As to Donielle's motion for relief, the court also denied her respective request to modify child support, on the basis that there had been no substantial change in circumstances. With respect to Donielle's request to set expenses, the court stated that, "due to [its] oversight, [it] did not in the judgment set expenses" and so it would "set those now." The court then granted Donielle's request to set expenses and ordered Michael to pay 65% and Donielle to pay 35% of the children's school and medical expenses that had accrued since the filing of Donielle's motion for relief.

¶ 18    Additionally, the court addressed Michael's pending petition for attorney fees. Specifically, the court noted that the first entry in the attached billing statement was for a telephone conversation between Michael and attorneys at the law firm that he had retained, Mirabella, Kincaid, Frederick & Mirabella, LLC (MKFM), regarding Donielle's emergency motion. The court further noted that each of the remaining entries in the billing statement were for the work that MKFM had done. The court asked Todd Scalzo, one of the attorneys at MKFM who was representing Michael, whether he had ever personally contacted Donielle, who had been acting *pro se* at the time she filed her emergency motion, to tell her that he believed that the motion lacked

7

a good-faith basis. Scalzo responded that he had not, but pointed out that attached to the emergency motion was a copy of the parties' earlier communications in which Michael had said to Donielle that the dissolution judgment did not require him to pay for the children's expenses following the date of the judgment.

¶ 19    During oral pronouncement of its ruling on the petition for attorney fees, the circuit court found that "there was no reach out to [Donielle] in regard to [Michael's] belief that the judgment did not allow for the relief she was requesting." The court also stated the following:

> "Then I see that every other entry [following Scalzo's initial appearance], at least docket entry, it was [Donielle's] fee petition was up *** and [Donielle] was present, and her petition just kept getting continued for status. Then shortly thereafter, [Donielle] did hire [a law] firm to represent her in June and immediately [her counsel] withdrew the motion, petition for rule recognizing that [Donielle] did not have grounds upon which to proceed.
>
> So at least what I would do, what I would have awarded is maybe the initial phone call that [Scalzo] had with [Michael] in regard to the bringing of the motion to dismiss and the filing of the motion to dismiss itself. There was no communication with [Donielle] before filing the motion."

The court then awarded Michael $162.50 in attorney fees to compensate for the initial conversation that he had with Scalzo regarding the filing of the motion to dismiss. Michael now appeals.

¶ 20                                   II. ANALYSIS

¶ 21    On appeal, Michael argues that the circuit court erred in denying his motion to modify child support, granting Donielle's request to set expenses, ordering him to pay 65% and Donielle to pay 35% of the children's expenses, and awarding him "*de minimus*" attorney fees. Prior to addressing

8

the merits of Michael's arguments, we note that no appellee brief was filed in this appeal. Because the record is simple and the issues can be decided without the aid of an appellee brief, and because Michael's brief demonstrates *prima facie* reversible error supported by the record, we will nevertheless decide the appeal without a brief from Donielle. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976) (outlining when a reviewing court may properly decide the merits of an appeal in the absence of an appellee brief).

¶ 22                                   A. Motion to Modify Child Support

¶ 23           Section 510 of the Act provides that a child support order may be modified upon a showing of a substantial change in circumstances. 750 ILCS 5/510(a)(1) (West 2022). "Not all changes in circumstances constitute a substantial change in circumstances for modification of child support purposes." *In re Marriage of Connelly*, 2020 IL App (3d) 180193, ¶ 18. Rather, a change in circumstances warrants modification of a child support order only when equitable action by the court is necessary to protect the children's best interests. *Id*. There is typically a substantial change in circumstances when the children's needs, the obligor parent's ability to pay, or both have changed since entry of the most recent child support order. *In re Marriage of Wengielnik*, 2020 IL App (3d) 180533, ¶ 13. A party seeking modification of child support must prove a substantial change in circumstances by a preponderance of the evidence. 750 ILCS 5/610.5(c) (West 2022).

¶ 24           "A trial court has wide latitude in determining whether *** a change in circumstances has occurred," and a reviewing court will reverse a circuit court's finding of no substantial change in circumstances only if that determination is against the manifest weight of the evidence. *Wengielnik*, 2020 IL App (3d) 180533, ¶ 13; *In re Marriage of Armstrong*, 346 Ill. App. 3d 818, 821 (2004). Further, the overall decision whether to modify an award of child support is within the

9

sound discretion of the circuit court and must not be disturbed, absent an abuse of discretion. *In re Marriage of Ross*, 355 Ill. App. 3d 1162, 1166 (2005).

¶ 25  Michael argues that the circuit court's finding that his income was $159,000 per year, rather than an average of $62,880.50 per year in 2021 and 2022, was against the manifest weight of the evidence. Michael further argues that each of the court's specific bases for discrediting his evidence was against the manifest weight of the evidence. Specifically, he asserts that the record contradicts the court's findings that he was argumentative and that his answers were nonresponsive. He also asserts that he provided compelling explanations for the fact that his financial affidavit did not match his tax returns, that the website for Kinsella Custom Concrete listed his former residence as a business address, and that the Illinois Secretary of State website stated that Kinsella LLC was an active business located at his parents' address.

¶ 26  In the context of appeals from decisions regarding the modification of child support, this court has articulated that "[it] will not substitute its judgment for that of the trial court regarding the credibility of witnesses, the weight to be given to the evidence, or the inferences to be drawn from the evidence." *In re Parentage of I.I.*, 2016 IL App (1st) 160071, ¶ 55 (internal citation omitted). As Michael himself acknowledges, this deference "is grounded in the reality that the circuit court is in a superior position to observe the demeanor of the witnesses, determine and weigh their credibility, and resolve conflicts in their testimony." *In re Marriage of Baumgartner*, 237 Ill. 2d 468, 486-87 (2010).

¶ 27  Here, Michael's contention that the circuit court's bases for discrediting his evidence were against the manifest weight of the evidence calls upon this court to improperly substitute its judgment for that of the circuit court regarding the credibility of the witnesses and the weight to

10

be given to the evidence presented during the evidentiary hearing. Thus, we decline to resolve the contention and will not consider it any further.

¶ 28    As to the court's determination that Michael's income following the dissolution judgment remained at least $159,000 per year, we cannot say that it was against the manifest weight of the evidence. Although Jayesinghe testified that Michael's 2021 and 2022 tax returns "fairly and accurately" reflected Michael's income during those years, weighing against Michael's position was Jayesinghe's additional testimony that his calculations were based on the information that Michael had provided him. As to this information, although Michael testified that he had provided Jayesinghe all relevant documents and truthfully answered all Jayesinghe's questions to assist him in preparing his 2021 and 2022 tax returns, the circuit court discredited portions of Michael's overall testimony because it was argumentative and nonresponsive and conflicted with other evidence that he had offered. Furthermore, Jayesinghe testified that he did not know whether Michael had provided all his banking statements from every institution with which he banked, and that Michael had not provided him with any general ledgers, profit and loss statements, or balance sheets related to his business. Additionally, the financial affidavit that Michael had prepared, which stated that he had earned $210,825.33 in gross receipts in 2022, conflicted with his tax returns, which stated that he had earned $200,925 in gross receipts for that year.

¶ 29    Based on the nature of the evidence presented at the evidentiary hearing, it was not against the manifest weight of the evidence for the circuit court to find that Michael's income had remained at least $159,000 per year following the dissolution judgment and had not decreased. Accordingly, the court properly denied Michael's motion to modify child support upon finding that there had been no substantial change in circumstances.

¶ 30                                B. Request to Set Expenses

11

¶ 31 Michael next argues that the circuit court erred by granting Donielle's request to set expenses. Specifically, Michael contends that the court erred as a matter of law by resolving the request pursuant only to section 505(a) of the Act, and not also pursuant to section 510 of the Act.

¶ 32 Section 505(a) of the Act authorizes the circuit court to order a parent obligated to support a child of the marriage to pay a reasonable and necessary amount for support. 750 ILCS 5/505(a) (West 2018). The section further provides that the court may order the payment of child support during certain proceedings, including, in relevant part, those for dissolution of marriage, temporary child support ahead of final judgment, or modification of a previous child support order pursuant to section 510 of the Act. *Id*. § 505(a).

¶ 33 Here, the proceedings in which the circuit court granted Donielle's request to set expenses occurred only after the court had already entered both the temporary agreed order and dissolution judgment. Thus, it cannot be said that the court granted the request in proceedings for dissolution of marriage or temporary child support ahead of final judgment. Nor did the court have jurisdiction to grant the request to set expenses retroactive to the date of the temporary agreed order or dissolution judgment because more than 30 days had passed since the entry of either. See *In re Marriage of Hubbard*, 215 Ill. App. 3d 113, 116 (1991) ("A court *** loses jurisdiction over a matter once 30 days have passed after the entry of a final and appealable order."). Consequently, the central issue on appeal, which the parties disputed below, is whether Donielle's request to set expenses was essentially a motion to modify child support governed by section 510 of the Act.

¶ 34 We find two cases to be instructive as to the proper characterization of Donielle's request to set expenses. In the first case, *Nerini v. Nerini*, 140 Ill. App. 3d 848 (1986), the circuit court issued a dissolution judgment that did not award child support and expressly retained jurisdiction to enter future awards of child support. *Nerini*, 140 Ill. App. 3d at 849. Following entry of the

dissolution judgment, the mother filed a petition for child support, which the court granted. *Id*. On appeal, the mother argued that section 510(a) did not govern her petition because the dissolution judgment did not contain an order regarding child support and she never sought child support in her complaint for dissolution of marriage, which meant that there was no order of child support to be modified. *Id*. at 853.

¶ 35     Rejecting the mother's arguments, the *Nerini* court noted that the circuit court had personal jurisdiction over the parties when the dissolution judgment was entered, and that, in the judgment, the circuit court had found that the mother had been solely supporting the child and that she was entitled to sole custody of the child. *Id*. The *Nerini* court further noted that the dissolution judgment did not order the father to pay child support and contained language that reserved jurisdiction to enter future awards regarding child support. *Id*. The *Nerini* court found that it was "evident" from the dissolution judgment that the circuit court "exercised its discretionary authority to set child support by not requiring [the father] to pay child support," and that the dissolution judgment, "by not providing for child support where the court had jurisdiction to do so and, under the facts where [the mother] made no request for child support, in essence, was *an order not awarding [the mother] child support ***.*" (Emphasis added.) *Id*. at 853, 856. The *Nerini* court thus ultimately determined that the judgment as to child support was final despite the absence of an award of child support and that the mother's petition for child support had to be treated as a motion to modify child support pursuant to section 510. *Id*. at 853-54.

¶ 36     In the subsequent case of *Conner v. Watkins*, 158 Ill. App. 3d 759 (1987), the circuit court stated during oral pronouncement of the dissolution judgment that the issue of child support would be reserved until the final disposition of another matter before the court, but the written dissolution judgment was silent as to child support. *Conner*, 158 Ill. App. 3d at 760. Years later, the mother

13

filed a petition in which she requested child support for a timeframe that preceded her petition. *Id.* at 760-61. On appeal from the circuit court's denial of her request, the *Conner* court noted that the facts before it were similar to those in the *Nerini* case, with "no valid distinction." *Id.* at 762. Namely, the *Conner* court pointed out that the dissolution judgments in both cases were devoid of an award of child support, and stated that, "[o]bviously, any subsequent award of support would constitute a modification of the previous judgment, thereby bringing the case within the purview of section 510(a) ***." *Id.*

¶ 37        Unlike in *Nerini*, in her petition for dissolution of marriage in this case, Donielle explicitly requested awards of child support and contribution to the children's expenses. Additionally, although the court did reserve jurisdiction in the dissolution judgment, it reserved jurisdiction for the sole purpose of enforcing the "term [*sic*] and conditions" of the judgment. However, we find any factual differences between this case and *Nerini* and *Conner* to be insignificant. The fact remains that, like in *Nerini* and *Conner*, the circuit court in this case never originally allocated the payment of the children's future medical and school expenses, which is a form of child support. See 750 ILCS 5/505(a) (West 2018) (defining the term "child" to include "any child under age 18" and requiring the court to consider the child's financial, physical and educational needs when determining child support). That Donielle requested contribution to these expenses and the court reserved jurisdiction to enforce the dissolution judgment does not negate this omission in the dissolution judgment. Thus, similar to the courts in *Nerini* and *Conner*, we find that, because the dissolution judgment in this case did not award child support in the form of allocation of the children's medical and school expenses, Donielle's subsequent request to allocate these expenses was, in truth, a request to modify the original award of child support governed by section 510(a) of the Act.

14

¶ 38        Under section 510(a)(1) of the Act, a child support order may be modified upon a showing of a substantial change in circumstances. 750 ILCS 5/510(a)(1) (West 2018). A child support order may also be modified absent a showing of a substantial change in circumstances when the amount awarded in child support differs depending on the statutory guidelines that are used, or the obligee parent shows a need to provide for the healthcare needs of the child. *Id*. § 510(a)(2). A circuit court's decision whether to modify an award of child support may not be disturbed, absent an abuse of discretion. *Marriage of Ross*, 355 Ill. App. 3d at 1166. An abuse of discretion occurs when the ruling on the motion to modify child support is arbitrary, fanciful, unreasonable, or based on an error of law. *In re Parentage of I.I.*, 2016 IL App (1st) 160071, ¶ 52.

¶ 39        Here, the circuit court abused its discretion in numerous ways in allocating the children's school expenses. First, the court refused to characterize Donielle's request to set expenses as a motion to modify child support governed by section 510 of the Act, and it seems that, due to this mischaracterization, it failed to make the relevant preliminary determinations prior to granting the request, such as that there had been a substantial change in circumstances, or, in the absence of a substantial change in circumstances, that the amount of child support differed depending on the guidelines used or that the support was needed to provide for the children's healthcare needs. See 750 ILCS 5/510(a)(1), (a)(2) (West 2022). In fact, when addressing the separate portion of Donielle's motion for relief in which she requested a modification of child support, the court found that there *had been no substantial change in circumstances* to warrant modification of the award, and neither party now challenges this determination. Additionally, the only rationale that the court offered prior to allocating the school expenses was that, "due to [its] oversight, [it] did not in the final judgment set expenses pursuant to [section] 505" and so would proceed to then do so. However, without more, the court's inadvertence was not a sufficient basis in the law for having

15

allocated these expenses. See 750 ILCS 5/510(a) (West 2022) (articulating when an award of child support may be modified). Thus, we find it necessary to vacate the portion of the court's order requiring Michael to pay 65% of the children's school expenses.

¶ 40    Regarding the court's allocation of the children's medical expenses, as we earlier noted, section 510(a)(2) authorizes a circuit court to modify an award of child support absent a substantial change in circumstances to provide for the healthcare needs of the child. *Id*. § 510(a)(2). Here, it can be inferred from the fact that the court ordered Michael to pay 65% of the children's medical expenses that the court credited Donielle's evidence as to the existence of these expenses and the children's corresponding healthcare needs. Furthermore, because Michael does not challenge this inferred finding regarding the children's healthcare needs, we uphold the finding and the portion of the court's order allocating the children's medical expenses.

¶ 41    As a final note, Michael also argues that the circuit court further erred by ordering him to pay 65% and Donielle to pay 35% of the children's medical and school expenses. Michael argues that the percentage that the court allocated to Michael for the children's expenses was erroneous because the percentage was based on its incorrect finding that his income was approximately $159,000 per year. Because we earlier found that the court properly determined Michael's income, we need not reach the issue of whether the percentage allocated to him for the children's expenses was proper.

¶ 42                              C. Attorney Fees

¶ 43    Last, Michael challenges the amount that the circuit court awarded him in attorney fees. A review of the record shows that the circuit court did not disclose the specific statute or rule under which it awarded Michael attorney fees. However, we note that, although Michael's motion to dismiss requested attorney fees pursuant only to section 508(b) of the Act (750 ILCS 5/508(b)

16

(West 2018)), his subsequent petition sought attorney fees pursuant to both section 508(b) of the Act and Illinois Supreme Court Rule (Rule) 137 (Ill. S. Ct. R. 137 (eff. July 1, 2013)).

¶ 44   "The purpose of Rule 137 *** is to prevent the filing of false and frivolous lawsuits." *Kensington's Wine Auctioneers & Brokers, Inc. v. John Hart Fine Wine, Ltd.*, 392 Ill. App. 3d 1, 15 (2009). Accordingly, Rule 137 allows a court to impose sanctions against a party for filing a pleading that "is not well grounded in fact; that is not supported by existing law or lacks a good-faith basis for the modification, reversal, or extension of the law; or that is interposed for any improper purpose." Ill. S. Ct. R. 137(a) (eff. July 1, 2013).

¶ 45   Separately, section 508(b) of the Act provides the following, in pertinent part:

"If at any time a court finds that a hearing under this Act was precipitated or conducted for an improper purpose, the court shall allocate fees and costs of all parties for the hearing to the party or counsel found to have acted improperly. Improper purposes include, but are not limited to, harassment, unnecessary delay, or other acts needlessly increasing the cost of litigation." 750 ILCS 5/508(b) (West 2018).

¶ 46   We will not overturn a circuit court's ruling on a motion for attorney fees pursuant to Rule 137 or section 508(b) absent an abuse of discretion. *In re Marriage of Michaelson*, 359 Ill. App. 3d 706, 715 (2005); *Technology Innovation Center, Inc. v. Advanced Multiuser Technologies Corp.*, 315 Ill. App. 3d 238, 244 (2000). A circuit court abuses its discretion where its ruling is arbitrary, fanciful, or unreasonable; where no reasonable person would take the view adopted by the circuit court; or where its ruling rests on an error of law. *In re Marriage of O'Malley ex rel. Godfrey*, 2016 IL App (1st) 151118, ¶ 60.

¶ 47   In considering Michael's petition for attorney fees, the circuit court noted that Donielle was representing herself when she first filed her emergency motion and that Scalzo, Michael's

17

counsel at that time, had never personally contacted Donielle to tell her that he believed that her motion was meritless. The court separately noted that the docket reflected that, during every hearing following Scalzo's initial appearance and the filing of Michael's motion to dismiss, the emergency motion "just kept getting continued for status" and the parties addressed a separate motion filed by Donielle's earlier counsel. Additionally, the court noted that, once Donielle obtained new counsel, her attorney "immediately *** withdrew the [emergency] motion." The court then decided to award Michael attorney fees only for his conversation with Scalzo regarding his motion to dismiss, which occurred prior to Scalzo's initial appearance.

¶ 48        Michael now argues that the court erred by denying him the remainder of his attorney fees because the denial was improperly based on the fact that Scalzo had never contacted Donielle to tell her that he believed that her emergency motion was meritless. Michael argues that the applicable law did not require Scalzo to have contacted Donielle to express this belief and that the circuit court's finding otherwise constituted reversible error.

¶ 49        We are aware of no governing authority that required Scalzo to have personally informed Donielle that he believed that her emergency motion was meritless. Furthermore, although Scalzo himself never contacted Donielle, Donielle testified during the evidentiary hearing that, when she had first asked Michael to contribute to the children's expenses, Michael had "[brought it] to [her] attention" that the dissolution judgment did not allocate the children's future expenses. An exhibit to Donielle's emergency motion also showed this written communication made by Michael. Thus, even if Donielle were required to be notified regarding the merits of her emergency motion, the evidence in the record showed that she had been notified. To the extent that the circuit court found otherwise, it is unclear what meaningful difference it made that Michael, rather than Scalzo, was the person who notified her.

18

¶ 50　　Nevertheless, it is well settled that we may affirm an award of attorney fees on any grounds in the record. See, *e.g.*, *Trustees of Wheaton College v. Peters*, 286 Ill. App. 3d 882, 887 (1997) (stating on appeal from the circuit court's denial of attorney fees that "it is well established that a reviewing court may affirm a trial court's decision on an issue on any basis appearing in the record."). As we earlier recounted, the circuit court articulated multiple bases for denying portions of Michael's attorney fees, one basis being that all the court hearings that followed Scalzo's initial appearance only involved continuing the emergency motion for status and proceedings on another unrelated motion. Michael does not now challenge this separate basis, which we find to be valid. See Ill. S. Ct. R. 1.5 (eff. Jan. 1, 2010) (explaining that, in assessing the reasonableness of attorney fees, the circuit court should consider the time and labor required). Consequently, we uphold the amount that the circuit court awarded Michael in attorney fees.

¶ 51　　　　　　　　　　　　　　　　III. CONCLUSION

¶ 52　　The judgment of the circuit court of Will County is affirmed in part and vacated in part.

¶ 53　　Affirmed in part and vacated in part.